Argued and submitted March 4, affirmed November 16, 1982

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## DALE LAVONNE BROCK,
*Petitioner on Review.*

## (CA 17453, SC 28135)

653 P2d 543

Diane L. Alessi, of Ransom, Blackman & Simson, Portland, argued the cause for petitioner on review. On the brief was John S. Ransom of Ransom, Rogers & Blackman, Portland.

Stephen Peifer, Assistant Attorney General, Salem, argued the cause for respondent on review. On the brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, William F. Gary, Deputy Solicitor General, and Robert C. Cannon, Assistant Attorney General, Salem.

Before Denecke, Chief Justice,* * and Lent, Linde, Peterson, Tanzer and Campbell, Justices.

TANZER, J.

---

* * Denecke, C. J., retired June 30, 1982.

## TANZER, J.

Defendant appeals a conviction of theft of a washer, a dryer, a roll of carpet and a full-length mirror. Those items were seized in his home at night pursuant to a search warrant which was indorsed for daytime or nighttime execution. The trial court denied his motion to suppress the evidence. The Court of Appeals affirmed in banc by a fragmented court. We allowed review to consider the application of ORS 133.565(3) which restricts execution of search warrants to daytime hours unless the warrant is otherwise indorsed.

The affidavit in support of the search warrant contained ample allegations to establish probable cause to believe that the stolen items had been in defendant's house for some two months. It contains no allegation to establish a need or desirability of nighttime execution.

The warrant was issued at 9:36 p.m. It contained an indorsement allowing execution "at any time of the day or night." The police executed the warrant shortly after 10 p.m. The defendant had earlier been taken into custody.

ORS 133.565(3) provides that a judge "may" indorse a warrant for nighttime search, but it does not state any prerequisites for that authorization. Three members of the Court of Appeals, in a lead opinion by Richardson, J., held that ORS 133.565(3) was violated because such an indorsement is valid only if there is a showing of special circumstances and here there was none. They held, however, that suppression was not required. Judge Buttler and two colleagues concurred on the theory that the statute, literally read, authorizes nighttime searches as long as the judge has made such an indorsement, regardless of whether a special showing has been made. Four members of the Court of Appeals, in an opinion by Gillette, J., agreed with Richardson, J., that a showing of special circumstances was required, but concluded that exclusion was a necessary remedy where no such showing has been made. It is our purpose on review to give more definitive meaning to the statute.

Although there is no express requirement of a showing of special circumstances for a nighttime search

indorsement,[1] we conclude that such a requirement is implicit in ORS 133.565(3).[2] Prior to the enactment of the statute, there was no restriction upon the time during which search warrants could be executed. ORS 133.565(3) was enacted as part of a comprehensive revision of the Oregon Criminal Procedure Code. Or Laws 1973, ch 836, § 85. It requires that any search warrant be executed during the daytime unless the issuing judge authorizes a nighttime search. The statute provides:

> "Except as otherwise provided herein, the search warrant shall be executed between the hours of 7 a.m. and 10 p.m. and within five days from the date of issuance. *The judge issuing the warrant may, however, by indorsement upon the face of the warrant, authorize its execution at any time of the day or night* and may further authorize its execution after five days, but not more than 10 days from date of issuance." (Our emphasis.)

In construing and applying ORS 133.565(3), we attempt to discern and effectuate the legislative intent which underlies its enactment. The most obvious and fundamental policy of the statute is a legislative determination that execution of search warrants during the day is to be normal and that nighttime searches are to be exceptional.

It is unlikely that the legislative intent in granting to judges the power to authorize exceptional searches was a grant of unbridled judicial discretion. Rather it appears to be a grant of judicial authority to permit exceptions only in accordance with the policy objectives of the legislation. Otherwise, one judge might authorize nighttime execution unless there is a reason not to, another only for certain applicants, and another never. It is the legislative policy which must guide issuing judges.

---

[1] *Cf.* FRCrP 41(c), which provides:

"* * * The warrant shall be served in the daytime, unless the issuing authority, by appropriate provision in the warrant, and for reasonable cause shown, authorizes its execution at times other than daytime. * * *"

The history of this rule is set out in *Gooding v. United States,* 416 US 430, 438-39, 94 S Ct 1780, 40 L Ed 2d 250 (1974).

[2] Passing comments during the Criminal Law Revision Commission deliberations are not conclusive, but indicate that the Commission regarded this requirement as implicit. *See* Minutes: Criminal Law Rev Comm 46-47 (June 16, 1972), Subcomm No. 2, p 5 (June 5, 1972), and p 10 (January 18, 1972).

The commentary to the proposal for ORS 133.565, after acknowledging that the statute modifies existing law, states the legislative policy underlying the statute:

"Subsection (3) contains an important innovation for Oregon Law. Where possible searches should be conducted in daylight hours. The invasion of private premises in the small hours of the night smacks of totalitarian methods and is more likely to create the terror that precipitates gun battles. Obviously there are occasions when it is imperative that the search be conducted at night. Subsection (3) permits such searches if the judge so authorizes service on the face of the warrant in the nighttime hours after 10 p.m." Criminal Law Revision Commission Proposed Criminal Code, Final Draft, 75 Commentary to § 35.

This passage of the Commentary clarifies somewhat that the purpose of the statute is to avoid the possibility of terror and gunplay which may arise from forcible nighttime entries unless that consideration is outweighed by circumstances indicating it is "imperative" to search at night. That purpose is consistent with the general purpose historically associated with statutes restricting nighttime searches. The earliest statement we find is that in Lord Hale's treatise, Pleas of the Crown (1865):

"It is fit that such warrants to search do express that search be made in the daytime; and though I do not say they are unlawful without such restriction, yet they are very inconvenient without it; for many times, under pretence of searches made in the night, robberies and burglaries have been committed, and at best it creates a great disturbance." Quoted in Cooley, Constitutional Limitations, 430 (7th ed 1903).

The avoidance of potential violence arising from non-recognition of the official identity of the executing officer also underlies the federal rule restricting authorization of nighttime searches, FRCrP 41(c). Accordingly, opinions determining what is not "daytime" under the federal rule (before the rule was amended to be time-specific), focused on whether there was enough natural light by which a householder could distinguish the features of the executing officer, see, e.g., United States v. Gosser, 339 F2d 102 (6th Cir 1964); Moore v. United States, 57 F2d 849 (1932); Atlanta Enterprises v. Crawford, 22 F2d 834 (ND Ga,

1927). *See also, Linnen v. Banfield,* 114 Mich 93, 72 NW 1 (1897), and *Petit v. Colmary,* 55 A 344 (1903).[3]

The affirmative aspect of the legislative purpose is that police should be authorized to search at night when it is imperative to do so. In light of both the preventive and the affirmative aspects of the legislative purpose, we take the statute to allow nighttime searches in circumstances in which restriction to daytime (by which we mean 7 a.m. to 10 p.m.) would reduce the likelihood that a search would be successful. Such circumstances would exist where there is a reasonable possibility that the fruits, instrumentalities or evidence of crime sought would not be expected to be at the searched premises during the day or might be removed or dissipated if the search is delayed. Nighttime searches would also be permissible in circumstances where the safety of the executing officers, occupants of premises or possessors of property would not be affected by a nighttime search. Examples of these circumstances might include searches of permanently lit areas (*e.g.,* airport baggage locker areas), places where people congregate during the day, but not at night (*e.g.,* supermarkets), or closed containers in police custody.

We construe ORS 133.565(3) to authorize a judge to warrant a search at any hour only upon allegation of special circumstances from which the judge can determine that an unrestricted warrant is reasonable in light of the statutory objectives. The statutes do not require that the showing be in any particular form beyond the requirements of ORS 133.545. The requisite circumstances need only be evident from the allegations supporting the application for a warrant. Nor must the issuing judge make express

---

[3] It has been suggested in dicta in *Jones v. United States,* 357 US 493, 498-499 (1958), that another purpose of the rule is protection of privacy. *See also, Gooding v. United States, supra,* 416 US at 462 (dissent of Marshall, J.). Professor LaFave also asserts this, but offers no holdings to support his assertion. *See* 2 LaFave, Searches and Seizure, § 416. The suggestion is more rhetorical than real, however, because such statutes restrict merely the timing of official invasions of privacy, not their permissibility, scope or intensity. The statutory device to avoid terror and potential violence imposes a degree of civility upon an essentially uncivil process, but it does not protect any place or anybody from official intrusion and scrutiny. This observation does not diminish the importance of ORS 133.565(3) or the degree of judicial vigor with which it is to be enforced. Avoidance of terror and violence is reason enough for legislative action.

findings, as long as the allegations are sufficient and the indorsement is in proper form.[4]

■      In this case, no such showing was made. The property to be seized (large household appliances and furnishings alleged to have been in place for two months) were not easily movable or disposable and the premises were not shown to be free of search-related hazards. Therefore the authorization for a nighttime execution of the search warrant was forbidden by ORS 133.565(3).

■      The next question is whether to suppress as evidence property seized in execution of a search warrant which is constitutionally sound, but issued after procedures which are insufficient to comply with ORS 133.565(3). It does not follow that evidence seized in execution of the search warrant must be suppressed. The criminal code itself does not so provide. A proposed section that specifically would have included unwarranted nighttime searches among the reasons for suppressing evidence was considered but not adopted by the Criminal Law Revision Commission.[5] Nor is the rule against nighttime searches except

---

[4] As Judge Buttler correctly pointed out in his specially concurring opinion, the Criminal Law Revision Commission preliminary draft included a requirement of specific findings before an unrestricted warrant could issue. The draft read as follows:

"(3) *Time of execution.* Except upon finding as hereinafter provided, the search warrant shall provide that it be executed during the daytime, and within five days from the date of issuance. Upon a finding by the judge of probable cause to believe that the place to be searched is not readily accessible, or that the objects to be seized are in danger of imminent removal, or that the warrant can only be safely or successfully executed at nighttime, or under circumstances the occurrence of which is difficult to predict with accuracy, the judge may, by appropriate provision in the warrant, authorize its execution at other times but not more than 10 days from the date of issuance."

*See* Criminal Law Revision Commission 1969, Preliminary Draft No. 3, § 6. This draft provision was deleted by the Commission and did not appear in the revision as proposed or enacted. *See* Or Laws 1973, ch 836, § 85. Judge Buttler concluded that this deletion evidenced a legislative intent that reviewing courts not look behind an indorsement. We prefer the inference that the section was deleted to simplify procedures and to eliminate a technical requirement which might jeopardize the validity of search warrants. We do not infer that the commission intended to allow indorsement without a factual basis related to the policies of ORS 133.565(3).

[5] Section 27 of the preliminary draft provided:

"A motion to suppress evidence may be based upon a violation of any of the provisions of this Code, including that:

upon special authorization one that is designed to protect the individual against the unwarranted seizure of his property or effects as such. The evidence could validly be seized in the daytime, and it could validly have been seized at night if the judge had found the kind of circumstances for authorizing a nighttime seizure that we have discussed above. In requiring such special circumstances, the law is concerned with minimizing the heightened risks and apprehensions associated with a nighttime intrusion into the home, not with overall protection against unjustified searches and seizure of persons or property. In this respect, ORS 133.565(3) is analogous to the "knock and announce" rule of former ORS 133.290 (now ORS 135.575(2)), violation of which was held not to require suppression of the seized evidence in *State v. Valentine/Darroch,* 264 Or 54, 504 P2d 84 (1972), *cert den* 412 US 948 (1973), and in *State v. Bishop,* 288 Or 349, 605 P2d 642 (1980).

We conclude from the absence of a statutory directive and from the character of ORS 133.565(3) as a statutory protection against potential violence and needless apprehension from nighttime intrusions that non-compliance with the statute does not give rise to any implications that the state's use of the evidence would vitiate the interest that the statute is intended to protect. The evidence therefore is admissible. Of course, this evidentiary holding does not relieve judges of their substantive obligation under ORS 133.565(3) to refrain from endorsing search warrants for nighttime execution absent allegations of special circumstances consistent with statutory policy.

Affirmed.

* * * * *

(2) In the case of a seizure based on the authority of a search warrant:

* * * * *

(d) The warrant was executed at a time not authorized herein, or was executed at nighttime or more than five days from the date of issuance without there having been made the findings required by subsection 3 of this Article * * *."