679 P.2d 829

**STATE of New Mexico,**
**Plaintiff-Appellant,**

v.

**Travis HAUSLER, Defendant-Appellee.**

**No. 7169.**

Court of Appeals of New Mexico.

Nov. 22, 1983.

Paul G. Bardacke, Atty. Gen., Ida M. Lujan, Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

Gary C. Mitchell, Payne & Mitchell, P.A., Ruidoso, for defendant-appellee.

## OPINION

LOPEZ, Judge.

This case comes to us on an interlocutory appeal as of right filed by the State under NMSA 1978, § 39–3–3(B)(2). The State appeals the trial court's granting of a motion to suppress evidence gathered by police at night in connection with the alleged commission by defendant of the crimes of trafficking in a controlled substance and receiving stolen property.

The sole issue on the appeal is whether the fruits of a nighttime search conducted pursuant to a constitutionally valid search warrant must be suppressed for failure to set out a sufficient factual basis in the affidavit which gives reasonable cause to execute the warrant after 10 p.m. and before 6 a.m., pursuant to NMSA 1978, Crim. P.R. 17(b) (Repl.Pamp.1980). This issue may be divided into three sub-parts: (1) Must the factual basis for reasonable cause to make a nighttime search appear on the face of the affidavit; (2) If so, does the affidavit involved in this case fail to provide such a factual basis; (3) If such a factual basis is required but does not exist in the instant case, should the exclusionary rule be applied to suppress the fruits of the searches? We answer these questions affirmatively, and so we affirm the trial court's order.

## FACTS

Defendant, Dr. Travis M. Hausler, D.D.S., was the subject of an undercover police operation in Ruidoso. Police took an informant from the Otero County jail to meet with defendant. The informant and

an officer, both wired with listening devices and monitored by police using binoculars, met with defendant at a designated location. While the officer was away, defendant gave the informant a Dilaudid tablet. Defendant agreed to exchange nine more tablets of the controlled substance at a subsequent meeting. Upon arrival at the second meeting, defendant was arrested, but he did not have the nine tablets in his possession.

The police promptly went before a magistrate and produced an affidavit requesting a warrant to search defendant's residence. The affidavit reads in pertinent part:

2) That on or about the 16th day of October 1982 Affiant participated in an investigation involving the above named defendant in reference to receiving stolen property and distribution of a narcotic Schedule II controled [sic] substance.

\*　　\*　　\*　　\*　　\*　　\*

4) That the above described defendant did enter the above described residence and return with one 4 mg. Dilaudid tablet and did transfer that tablet to [Officer] Gerald Dwayne Clifton.

5) That the above describe[d] defendant did negotiate with Gerald Dwayne Clifton to deliver (9) Nine more Dilaudid tablets in exchange for the firearms offered in trade.

\*　　\*　　\*　　\*　　\*　　\*

9) Affiant has reason to beleive [sic] that the property sought will be destroyed if not seized immidiately [sic], therefore affiant requests night service as it is after 10:00 pm at this signing.

The warrant was issued, explicitly stating that it could be executed "at any time of the day or night." It was executed after 11 p.m. that night.

Officers sought a second warrant to seize a stolen color television set which they discovered during the first search. The magistrate issued a warrant which, again, explicitly provided that it could be executed "at any time of the day or night." It was executed before 6 a.m. the next morning.

Officers sought a third search warrant a few days later to search defendant's residence for other stolen property. This was a regular daytime warrant which was duly executed at 1 p.m.

Defendant filed a motion to suppress evidence obtained through the transmitting devices and the three search warrants. The district court denied the suppression of evidence obtained by means of the transmitters, but granted suppression of the evidence obtained by means of the three search warrants.

DISCUSSION

### I. Must The Basis For Reasonable Cause To Make A Nighttime Search Appear On The Affidavit's Face?

■ Criminal Procedure for District Courts Rule 17(b) states in pertinent part:

The warrant shall contain or have attached the sworn written statement of facts showing probable cause for its issuance and the name of any person whose sworn written statement has been taken in support of the warrant. A search warrant shall direct that it be served between the hours of 6:00 a.m. and 10:00 p.m., according to local time, *unless the issuing judge, by appropriate provision in the warrant, and reasonable cause shown, authorizes its execution at any time.*

NMSA 1978, Crim.P.R. 17(b) (Repl.Pam. 1980) (Emphasis added). The district court interpreted the emphasized language to require that a factual basis exist on the face of the affidavit itself explaining the "reasonable cause" to make a search after 10 p.m. and before 6 a.m.

Whether reasonable cause should exist under all the circumstances of a case, as asserted by the State, or whether reasonable cause must appear on the face of the affidavit turns on a construction of the language of Rule 17(b). We state initially that the rule is ambiguous and is therefore a proper subject for our interpretation. Sutherland says that once a court determines that particular words in a statute are not sufficiently accurate to make the refer-

ent determinate for the litigation before a court:

> It is then the function of the court to make the referent determinate or as determinate as possible from the information and evidence which is presented to it.

2A Sutherland Statutory Construction § 45.02 (C. Sands 4th ed. 1973). The words "unless the issuing judge, by appropriate provision in the warrant, *and reasonable cause shown* " in Rule 17(b) leave ambiguous whether "reasonable cause" must be shown on the affidavit's face or in some other manner.

In interpreting Rule 17(b), we turn first to New Mexico cases which have interpreted the rule. Neither the parties nor our research reveal any such cases directly on point. *State v. Dalrymple*, 80 N.M. 492, 458 P.2d 96 (Ct.App.1969), a case involving a nighttime search, is not dispositive on the present issue because that decision was controlled by 1967 N.M.Laws, ch. 245, § 1, a rule which did not contain the "reasonable cause" language of current Rule 17(b).

We next turn to the Committee Commentary following the rule which states:

> **Committee Commentary.**—This rule is patterned after Rule 41 of the Federal Rules of Criminal Procedure.
>
> \* \* \* \* \* \*
>
> A warrant must be served between the hours of 6:00 a.m. and 10:00 p.m. unless for reasonable cause shown the issuing judge authorizes the execution at any time. The time periods designated were taken from the definition of "day time" in Rule 41(h) of the Federal Rules of Criminal Procedure.
>
> \* \* \* \* \* \*

Aside from these brief comments, no other reference is made to subsection (b) of Rule 17. Unfortunately, this commentary sheds little light on the question before us. The use of Rule 41 of the Federal Rules, as the model from which our rule was derived, however, provides us with a starting point for our analysis.

Federal courts have dealt with the precise question before this court. In *United States v. Searp*, 586 F.2d 1117 (6th Cir. 1978), *cert. denied*, 440 U.S. 921, 99 S.Ct. 1247, 59 L.Ed.2d 474 (1979), the court construed Fed.R.Crim.P. 41(c), which provides in pertinent part:

> The warrant shall be served in the daytime, unless the issuing authority, by appropriate provision in the warrant, and for reasonable cause shown, authorizes its execution at times other than daytime.

This language substantially resembles the applicable terms of New Mexico's Rule 17(b). Although we are not bound by federal decisions we proceed to examine the *Searp* court's interpretation of the night search rule. In explaining the rule, the sixth circuit court noted:

> The federal Rule requires explicit authorization for a night search, and "reasonable cause shown" to the issuing magistrate justifying the unusual intrusion of a search at night. The Rule recognizes that there are times when a night search is necessary; if, for instance, execution would be impossible in the daytime or the property sought is likely to be destroyed or removed before daylight. The Rule requires only some factual basis for a prudent conclusion that the greater intrusiveness of a nighttime search is justified by the exigencies of the situation. The procedural requirements of the Rule ensure that the fact that a nighttime search is contemplated by the police is brought to the attention of a magistrate and that he or she consciously decide whether such a particularly abrasive intrusion is called for in a given situation.

*Searp*, 586 F.2d at 1121. The affidavit in *Searp* contained neither a request for a night search nor did it disclose a factual basis which might justify a night search. The court held that for a search warrant to be legally executed at night, it must contain a night request (i.e., after 10 p.m. and before 6 a.m.) and supporting factual data which justifies the night search. *Id.* at

1122. *See also State v. Brock*, 294 Or. 15, 653 P.2d 543 (1982).

The federal Ninth Circuit Court of Appeals has cited *Searp* approvingly for the proposition that Rule 41(c)(1) requires that facts sufficient to find reasonable cause to make a night search must be shown on the face of the affidavit. *United States v. Stefanson*, 648 F.2d 1231 (9th Cir.1981).

We find the federal authority persuasive. For purposes of New Mexico's night search rule, we consider the utility of following the federal approach. First, requiring a clear factual statement of the reasons justifying a night search on the affidavit's face gives the reviewing court a clear record of whether the affiant explained and the issuing judge explicitly agreed to the night search. Such warrants are usually secured during late hours and hurriedly at the judge's home doorstep. Nighttime searches are serious matters and should be seriously contemplated and fully documented by the judge issuing the night search warrant. Second, police officers are not substantially inconvenienced by the requirement that they set out in the affidavit a substantial factual basis supporting their proposed night search. Presumably, affiants already have the requisite factual data available. The requirement that they show probable cause for the search compels police officers to collect this data. All we hold today is that Rule 17(b) requires affiants to take the additional step of stating explicitly on the affidavit the reasonable cause which justifies the proposed nighttime search. *See Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

**II. Does The Affidavit Involved In This Case Provide A Substantial Factual Basis to Justify The Night Search?**

 The district court found that the first affidavit, which stated that the property sought would be destroyed if not seized immediately, was a "mere conclusion" and, as such, did not constitute reasonable cause to make a nighttime search. Paragraph 9 provides as follows:

9) Affiant has reason to beleive [sic] that the property sought will be destroyed if not seized immidiately [sic], therefore affiant requests night service as it is after 10:00 pm at this signing.

We agree with the court below that this statement provides no reasonable cause basis upon which the night search might be justified. There simply exists no "factual basis for a prudent conclusion that the greater intrusiveness of nighttime execution of the warrant is justified by the exigencies of the situation." *United States v. Gooding*, 477 F.2d 428 (D.C.Cir.1973) (Robinson, J., concurring), *aff'd*, 416 U.S. 430, 94 S.Ct. 1780, 40 L.Ed.2d 250 (1974). The affidavit did not specify why a night search was necessary; the defendant had already been taken into custody. How the defendant might destroy the evidence while sitting in a jail cell was not explained. There was also no showing that defendant had friends or family with access to his home who he might contact by telephone and ask to commit the illegal act of destroying the evidence. Defendant might presumably post bond and be released by the next morning after his evening arrest, but officers could still execute a day search after 6 a.m. the next morning and before defendant's return home. There *may have been* reasons why police had to move promptly and conduct a night search. But the affidavit does not reflect these reasons. Because the first warrant was defective, it follows that the two subsequent warrants in this case are also invalid as "fruit of the poisonous tree." *Nardone v. United States*, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939).

**III. Should The Exclusionary Rule Be Applied To Suppress The Fruits Of The Searches?**

 Although finding that the federal night search rule had been violated, the court in *Searp* ironically declined to apply the exclusionary rule. *Searp*, 586 F.2d at 1122. The court therefore proceeded to reverse the lower court's suppression order. Legal precedent in this state does not allow us to follow this aspect of the federal

approach. *State v. Dalrymple*, as noted above, was inapplicable to our consideration of whether reasonable cause should exist on the affidavit's face; however, *Dalrymple* makes certain determinations which we here follow. That case quoted approvingly from *People v. Mills*, 251 Cal. App.2d 420, 59 Cal.Rptr. 489 (1967), as follows:

> Search of a person's home or his effects is a drastic intrusion upon personal rights; therefore statutes regulating the use of search warrants should be construed in favor of the individual * * * * Daytime service is to be preferred to search at night; therefore, where a statute authorizes nighttime service when certain requirements are met, the warrant must conform to the statutory requirements in every material detail.

*Dalrymple*, 80 N.M. at 493, 458 P.2d at 97. The court went on to conclude that the searches were "illegal and unreasonable and the motion to suppress should have been granted." *Id.* at 494, 458 P.2d at 98. We therefore conclude that the evidence obtained pursuant to the invalidly secured warrants in this case was appropriately suppressed.

 The requirement under Rule 17(b), for a special showing of the necessity for a nighttime search, is predicated upon a recognition that nocturnal searches are potentially more dangerous than those executed during the daytime. *See State v. Brock.* A mere assertion of a desire to conduct a night search is insufficient. The sufficiency of an affidavit and the necessity of a nighttime search must appear within the affidavit's four corners.

Admittedly, the judge issuing the night search warrant in this case may have honestly believed that the reasons for night search need not have been listed on the affidavit; however, our ruling today puts judges and police officers on notice of the requirements of Rule 17(b). The requirement that a factual basis justifying a night search appear on the affidavit's face promotes the policy that police take special care in requesting night search warrants.

The careful enforcement of justice by police is rewarded. The haphazard enforcement of justice, which trample upon an individual's right to be free of unnecessary night intrusions, is penalized by suppression of the fruits of such searches.

CONCLUSION

We conclude that the trial court did not err in suppressing the evidence obtained by means of the three search warrants.

The judgment of the trial court is affirmed.

IT IS SO ORDERED.

DONNELLY and NEAL, JJ., concur.