STATE of Utah, Plaintiff and Petitioner,

v.

Keeley L. ROWE, Defendant
and Respondent.

No. 910165.

Supreme Court of Utah.

Sept. 28, 1992.

R. Paul Van Dam, Christine Soltis, Salt Lake City, for plaintiff and petitioner.

Shelden R. Carter, Provo, for defendant and respondent.

HALL, Chief Justice:

The State of Utah seeks review of a court of appeals decision reversing the conviction of Keeley L. Rowe on the ground that the evidence used against her was seized in violation of the nighttime search provision of Utah Code Ann. § 77–23–5.[1] We reverse the court of appeals and reinstate the conviction.

The parties do not dispute the facts. On October 7, 1988, a Washington County magistrate issued a search warrant that authorized the police to search for narcotics at the residence of Stan Swickey in Leeds, Utah. The warrant authorized the police to enter "day or night" and without notice. In addition to the search warrant, the police obtained an arrest warrant for Swickey.

Police executed the search warrant on October 7 at approximately 11:30 p.m. When the police entered the apartment, they found Swickey and eight other people on the premises. Swickey and seven others were in the living room playing cards, and Rowe was preparing drinks in the

---

1. *State v. Rowe*, 806 P.2d 730 (Utah Ct.App. 1991). Section 77–23–5 states:

   (1) The magistrate must insert a direction in the warrant that it be served in the daytime, unless the affidavits or oral testimony state a reasonable cause to believe a search is necessary in the night to seize the property prior to it being concealed, destroyed, damaged or altered, or for other good reason; in which case he may insert a direction that it be served any time of the day or night.

Defendant also claimed that the search violated the no-knock search provision of Utah Code Ann. § 77–23–10.

kitchen. After securing the premises, the officers had Rowe join the others in the living room, while they took Swickey into the kitchen and placed him under arrest. The officers also placed another individual under arrest but told the remaining individuals, including Rowe, that they were free to leave.

Rowe, accompanied by a police officer, went into the bedroom to retrieve her shoes from a pile of items, several of which were articles of women's clothing. After Rowe retrieved her shoes, the officer asked her if she had retrieved all of her possessions from the room; she replied that she had. Rowe left and the police searched the premises.

The officers found narcotics throughout the apartment. They found a purse among the pile of items from which Rowe had retrieved her shoes. The purse contained a small vial holding 220 milligrams of methamphetamine. The purse also contained a letter addressed to Rowe. The next day, the police contacted Rowe and informed her that they had her purse. She went to the police station, identified the purse, and was placed under arrest. After the police advised her of her *Miranda* rights,[2] Rowe admitted that the purse and vial of drugs belonged to her. She stated that she had been "ripping off" drugs that belonged to Swickey.

Prior to trial, Rowe moved to suppress the evidence of drugs found in her purse. The motion was denied. Rowe waived a jury trial and renewed her motion at trial before the judge. At trial, the evidence established that Rowe had sexual relations with Swickey in the past, kept clothing in Swickey's apartment, and occasionally stayed as an overnight guest at Swickey's apartment. However, the evidence did not establish that Rowe intended to spend the night on the date of the search. The trial court again denied the motion to suppress and convicted Rowe of possession of a controlled substance.[3]

Rowe appealed her conviction. The court of appeals reversed, holding that the affidavit submitted in support of the warrant to search Swickey's apartment contained insufficient information to justify the inclusion of a nighttime search provision in the search warrant;[4] that Rowe had standing to challenge the adequacy of the warrant authorizing the search of Swickey's home;[5] that the State presented no clear and convincing evidence that Rowe had formed a subjective intent to abandon her purse and thus failed to show that she forfeited her standing to challenge the search warrant;[6] and that because the evidence presented did not support the nighttime provision of the search warrant, the evidence seized in the search should be suppressed.[7]

Three issues are presented on appeal: (1) Did the court of appeals err in ruling that the exclusionary rule is the appropriate remedy for violation of the nighttime search warrant provisions of section 77–23–5? (2) Did the court of appeals err in holding that Rowe had standing to challenge the validity of the search warrant? (3) Did the court of appeals err in holding that in order to establish a forfeiture of a constitutionally protected right of privacy in personal property, the State has the burden of proving by clear and unequivocal evidence that the owner of the property had the subjective intent to abandon the property?

The State does not challenge the court of appeals' conclusion that the supporting affidavit presented insufficient evidence to support inclusion of the nighttime search provision.[8] The affidavit contained pre-

---

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**3.** Utah Code Ann. § 58–37–8(2)(a)(i), (b)(ii).

**4.** *Rowe,* 806 P.2d at 733. Rowe also appealed the decision on the basis of the no-knock provision in the warrant. The court of appeals upheld the lower court's determination that sufficient justification existed for an unannounced entry. *Id.* at 732–33.

**5.** *Id.* at 736.

**6.** *Id.* at 736–37.

**7.** *Id.* at 739.

**8.** For purposes of addressing this issue, we assume that defendant had standing to contest the validity of the warrant and the legality of the search of the Swickey residence. We are not at

printed language which stated that the affiant reasonably believed "that the property sought could be easily destroyed or hid [sic] or that harm to officers could result from notice." Two boxes followed this language, the first requesting authority "to search DAY OR NIGHT" and the second requesting authority "to search WITHOUT NOTICE." Both boxes were checked. The affidavit contained no other factual information to support these requests.

The State does challenge the court of appeals' conclusion that suppression is the appropriate remedy for failure to include additional facts on the affidavit as required by section 77–23–5. We have previously held that suppression of evidence is an appropriate remedy for illegal police conduct only when that conduct implicates a fundamental violation of a defendant's rights:[9]

> "Only a 'fundamental' violation of [a rule of criminal procedure] requires automatic suppression, and a violation is 'fundamental' only where it, in effect, renders the search unconstitutional under traditional fourth amendment standards. Where the alleged violation ... is not 'fundamental' suppression is required only where: (1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the [r]ule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision of the [r]ule....
>
> ... It is only where the violation also implicates fundamental, constitutional concerns, is conducted in bad-faith or has substantially prejudiced the defendant

that exclusion *may* be an appropriate remedy."[10]

■ The majority of courts that have examined the issue have determined that procedural violations in the execution of search warrants do not require suppression of the evidence seized.[11] Under the facts of this case, we conclude that the violation of section 77–23–5 did not implicate defendant's fundamental rights. Defendant has not argued that there were no substantive grounds for a nighttime, no-knock warrant. She merely argues that the affidavit supporting the application for a warrant *failed to list* those grounds and that the magistrate failed to assess facts beyond the affidavit's preprinted form. While we do not approve of the "rubber stamp" procedure employed by the magistrate in the issuance of this warrant, it appears that had the magistrate in this case requested and checked the substantive facts, those facts would have supported a nighttime entry.

It is of particular significance that in addition to the search warrant for Swickey's apartment, the officers carried a valid warrant for Swickey's arrest. This warrant authorized entry into his home during the day or night to effect the arrest. As part of that arrest, the officers had a right to secure the Swickey residence to prevent destruction of evidence or danger to themselves. The officers' entry into the apartment during nighttime hours and without notice, although not properly authorized by the search warrant, was properly authorized by the warrant for Swickey's arrest. Similarly, the search warrant properly authorized the officers to search the apart-

this time, however, ruling on the court's holding that defendant had an interest in the privacy of Swickey's residence. *See infra* text accompanying note 14.

**9.** *State v. Fixel,* 744 P.2d 1366, 1369 (Utah 1987); *State v. Buck,* 756 P.2d 700, 702–03 (Utah 1988); *accord United States v. Schoenheit,* 856 F.2d 74, 76–77 (8th Cir.1988); *United States v. Searp,* 586 F.2d 1117, 1125 (6th Cir.1978), *cert. denied,* 440 U.S. 921, 99 S.Ct. 1247, 59 L.Ed.2d 474 (1979); *United States v. Shelton,* 742 F.Supp. 1491, 1502–03 (D.Wyo.1990); *People v. Dyla,* 142 A.D.2d 423, 536 N.Y.S.2d 799, 808–09 (1988), *appeal denied,* 74 N.Y.2d 808, 546 N.Y.S.2d 566,

545 N.E.2d 880 (1989); *State v. Ford,* 310 Or. 623, 801 P.2d 754, 764–66 (1990); *State v. Brock,* 294 Or. 15, 653 P.2d 543, 547 (1982); *Commonwealth v. Musi,* 486 Pa. 102, 404 A.2d 378, 384–85 (1979).

**10.** *Fixel,* 744 P.2d at 1369 (emphasis in original) (quoting *Commonwealth v. Mason,* 507 Pa. 396, 490 A.2d 421, 426 (1985)).

**11.** *See, e.g., Schoenheit,* 856 F.2d at 76–77; *Searp,* 586 F.2d at 1125; *Shelton,* 742 F.Supp. at 1502–03; *Dyla,* 536 N.Y.S.2d at 808–09; *Ford,* 801 P.2d at 764–66; *Brock,* 653 P.2d at 547; *Musi,* 404 A.2d at 384–85.

ment during daylight hours. Therefore, only the timing of the actual search of the apartment was improperly authorized. Inasmuch as the officers made lawful entry onto the premises and had general authority to secure those premises plus a valid warrant to search the premises during the daylight, the improperly authorized execution of that search during the nighttime constitutes a minimal intrusion on interests protected by the Fourth Amendment. The erroneous addition of nighttime authority in the search warrant issued in this case did not rise to a fundamental violation of Fourth Amendment rights, but merely constituted a procedural violation of section 77–23–5. Such a procedural violation requires suppression of evidence obtained only where it demonstrates prejudice to the defendant or a lack of good faith on the part of the police.[12]

The facts which show that no substantive violation of constitutional rights occurred in this case also show that defendant was not prejudiced as a result of the nighttime search. In order to show prejudice, defendant must establish that absent the nighttime entry, "the search would not otherwise have occurred or would not have been so abrasive if the Rule had been followed."[13] Defendant has shown no such prejudice. Even without the erroneous inclusion of nighttime search authority, the officers had authority to enter Swickey's residence during nighttime hours pursuant to a valid arrest warrant. The magistrate's erroneous approval of nighttime search authority for Swickey's home was harmless, as the officers could have rightfully taken steps to secure the house pursuant to the arrest warrant, to ask defendant to leave the house, and to search the house in the daylight hours. The erroneous issuance of the warrant did not therefore prejudice defendant, whose property would have been searched regardless of the time of the warrant's execution.[14]

Because we hold that under the circumstances of this case, the court of appeals erred in applying the exclusionary rule as the appropriate remedy for violation of the nighttime search warrant provisions of section 77–23–5, we do not address the other issues presented in this case. Regardless of defendant's standing or ability to contest the search of Swickey's residence, she cannot obtain the remedy she seeks, namely suppression of the evidence against her. It is therefore unnecessary to rule upon the correctness of the court of appeals' determination that defendant could properly contest the search.

We reverse the decision of the court of appeals and remand for reinstatement of defendant's conviction.

HOWE, Associate C.J., and STEWART, J., concur.

DURHAM, Justice (concurring in the result):

I concur in the result of the majority opinion on the sole ground that the valid arrest warrant in the possession of the officers here which permitted nighttime entry eliminated any prejudice arising from the defects in the search warrant.

ZIMMERMAN, J., concurs in the concurring opinion of DURHAM, J.

---

**12.** *Fixel,* 744 P.2d at 1369.

**13.** *Schoenheit,* 856 F.2d at 77; *see also* Utah R.Crim.P. 30 (error that does not affect the substantial rights of a party shall be disregarded); *State v. Bruce,* 779 P.2d 646, 651 (Utah 1989) (improper admission of prior crimes evidence held harmless error); *State v. Verde,* 770 P.2d 116, 120 (Utah 1989) (harmless error standard in criminal cases).

**14.** *Fixel,* 744 P.2d at 1369.