STATE of Utah, Plaintiff and Appellant,

v.

David SIMMONS and Patricia
Kay Simmons, Defendants
and Appellees.

No. 920800–CA.

Court of Appeals of Utah.

Dec. 29, 1993.

Jan Graham, State Atty. Gen., Kenneth A. Bronston, Asst. Atty. Gen. (Argued), Salt Lake City, for plaintiff and appellant.

Jay D. Edmonds (Argued), Salt Lake City, for defendant and appellee David Simmons.

John Blair Hutchinson, Florence & Hutchinson, Ogden, for defendant and appellee Patricia Simmons.

Before BENCH, DAVIS and JACKSON, JJ.

## OPINION

DAVIS, Judge.

Appellant, the State of Utah, filed this interlocutory appeal from the trial court's suppression order. Appellees, David Simmons and Patricia Kay Simmons, have been charged with possession of a controlled substance with the intent to distribute within 1000 feet of a child care facility or with a person younger than eighteen years. Utah Code Ann. § 58–37–8(1) & (5) (Supp.1993). We affirm in part, reverse in part, and remand for further proceedings.

## FACTS

The relevant facts of this case are those contained in the affidavit supporting the search warrant application. The affiant, Carl Merrino, an experienced Roy City police officer, whose assignment at the time of the incident involved investigating narcotics trafficking in Weber and Morgan Counties, alleged that he had supervised a controlled marijuana buy from a dealer by a confidential informant (C.I.). The dealer told the C.I. that he in turn purchased the marijuana from a location in Willard. Less than a day before Merrino applied for the warrant, the C.I. had again approached the dealer to buy marijuana. This time, the dealer and the C.I. drove to the dealer's source in Willard. The affiant requested that the magistrate approve a nighttime warrant to search the Willard residence.

The grounds for nighttime search warrants are set out in Utah Code Ann. § 77–23–5(1) (1990):

> The magistrate must insert a direction in the warrant that it be served in the daytime, unless the affidavits or oral testimony state a reasonable cause to believe a search is necessary in the night to seize the property prior to it being concealed, destroyed, damaged or altered, or for other good reason; in which case he [or she] may insert a direction that it be served any time of the day or night. An officer may request other persons to assist him [or her] in conducting the search.

Merrino stated the following as grounds for a nighttime warrant:

> Your affiant prays for a night time service as well as no-knock service of the warrant. Your affiant knows [from] experience and training that more and more narcotics dealers are arming themselves for protection against one another as well as from narcotics users. Your affiant has been on numerous narcotic search warrants where firearms are available to suspects inside the premises. Further, your affiant believes it is safer for the officers serving the warrant as well as non-participants to the narcotic sales, if the officers have the cover of darkness as well as no-knock service.
>
> . . . .
>
> Your affiant believes that there is a quantity of marijuana at the residence in Willard, Utah at this time and that to delay would afford the residents ample time to sell, destroy, or move the marijuana. Due to the last hour of the day your affiant requests that the warrant be issued for day or night time service.

The magistrate approved a nighttime search warrant and the parties stipulated that the sun set at 5:20 p.m. on January 29, 1992 and that the officers executed the warrant at 6:30 p.m. on that day. As a result of material seized by the officers, the Simmonses were charged with possession of a controlled substance with intent to distribute within 1000 feet of a child care facility or with a person younger than eighteen years.

The court heard the Simmonses' motion to suppress on August 3, 1992. The record shows that no evidence was presented other than the affidavit and warrant. Relying in part on *State v. Rowe*, 806 P.2d 730 (Utah App.1991) (*Rowe I*), *rev'd in part*, 850 P.2d 427 (Utah 1992) (*Rowe II*), together with the stipulation, the court granted the motion to suppress. The court found that the affidavit supporting the warrant alleged no specific fact justifying a nighttime search, and, presumably, that the warrant was executed at night within the meaning of section 77–23–5(1). The State objected to the proposed findings of fact and conclusions of law submitted by defense counsel. The trial court set a date to hear these objections and to

**616**

consider how the recently issued case of *Rowe II* would apply to the present case.

The supplementary hearing took place October 19, 1992. Neither side presented evidence other than the stipulation and the documents, including the affidavit, already before the court. Again, the court ordered that the evidence be suppressed.

Following the supplementary hearing, the trial court made the following findings:

1. That the search warrant in these cases was executed in the nighttime.

2. That the affidavit in support of the search warrant alleges no specific facts justifying a nighttime search as required by § 77–23–5(1), Utah Code Ann., but rather alleges matters based upon the affiant's general knowledge and experience in drug cases.

3. Because there is no evidence before the Court that the officers who executed the search warrant in this case had in their possession a valid warrant for the arrest of any person within the premises searched, the procedural defect in failing to include sufficient grounds for nighttime entry, and the nighttime execution of this search warrant, amounted to a fundamental violation of the Defendants' rights requiring suppression of the evidence seized pursuant to the search warrant. *State v. Fixel,* 744 P.2d 1366 (Utah 1987); *State v. Rowe,* 196 Utah Adv.Rep. 14 [850 P.2d 427] (Utah 1992).

Based upon those findings, the court suppressed evidence seized pursuant to the warrant.[1] The State then took this interlocutory appeal pursuant to permission granted by this court.

## DEFINITION OF "NIGHTTIME"

■ The State concedes the affidavit lacked sufficient factual specificity to authorize nighttime entry under *Rowe I.*[2] Even so, the State claims that the trial court erred as a matter of law in its definition of "night-

time" as used in section 77–23–5(1), and that the trial court clearly erred in finding that 6:30 p.m. on January 20, 1992 was "in the night." We independently review questions of statutory construction for correctness and do not defer to the trial court. *State v. Gallegos,* 849 P.2d 586, 589 (Utah App.1993); *State v. Souza,* 846 P.2d 1313, 1317 (Utah App.1993).

Section 77–23–5(1) provides that a magistrate must direct that a warrant be served "in the daytime, unless the affidavits or oral testimony state a reasonable cause to believe a search is necessary in the night to seize the property prior to it being concealed, destroyed, damaged or altered, or for other good reason." The determination of the definition of "night" or "nighttime" pursuant to section 77–23–5 is a matter of first impression. *See State v. Purser,* 828 P.2d 515, 519 n. 1 (Utah App.1992) (no Utah statutes or cases defining "nighttime" for purposes of search warrants). The basic rules of statutory construction are as follows:

First, terms of related code provisions should be construed in a harmonious fashion. Second, statutory terms should be interpreted and applied according to their commonly accepted meaning unless the ordinary meaning of the term results in an application that is either unreasonably confused, inoperable, or in blatant contradiction of the express purpose of the statute. Third, if there is doubt or uncertainty as to the meaning or application of the provisions of an act, it is appropriate to analyze the act in its entirety, in light of its objective, and to harmonize its provisions in accordance with its intent and purpose.

*Souza,* 846 P.2d at 1317 (quotations and citations omitted).

Although no Utah statutes or cases define "nighttime" as used in the present context, *Purser,* 828 P.2d at 519 n. 1, case law of other states has established and/or interpreted three general views of the definition of

---

1. The court's "Findings and Order on Defendants' Motion to Suppress" were prepared by defense counsel and approved as to "form and content" by the State's counsel.

2. *Rowe I* provided that a particularized showing for a nighttime search could not be supported where the affiant merely checks the preprinted provision on the affidavit form. *State v. Rowe,* 806 P.2d 730, 733–34 (Utah App.1991).

"nighttime" in this context. *Id.; see also* 2 Wayne R. LaFave, *Search and Seizure* § 4.7(b), at 264 & n. 22 (1987).

The first view requires a factual determination of whether there is sufficient natural light that one can distinguish a person's features. *See, e.g., Edwards v. State,* 42 Ala. App. 307, 162 So.2d 894, 894–95 (1964); *State v. Burnside,* 113 Idaho 65, 741 P.2d 352, 356 (App.1987). The second view ties the definition of "nighttime" to sunrise and sunset. *See, e.g., State v. Holman,* 229 Neb. 57, 424 N.W.2d 627, 628 (1988) (daytime extends from dawn to darkness where not defined in statute); *People v. Malinsky,* 36 Misc.2d 204, 232 N.Y.S.2d 843, 845 (N.Y.Sup.Ct.1962) (nighttime between setting and rising of sun). The last view sets forth specific hours for execution of a search warrant without special authorization. *See, e.g.,* Fed.R.Crim.P. 41(h); *People v. Glass,* 56 Cal.App.3d 368, 128 Cal. Rptr. 413, 415–16 (1976) (6 a.m. to 10 p.m.). *But see Holman,* 424 N.W.2d at 628–29 (lower court erred in following Fed.R.Crim.P. 41 definition of between 6 a.m. and 10 p.m.).

■ Generally, we interpret statutory terms according to their commonly accepted meaning. *See Souza,* 846 P.2d at 1317. Given the utility of an easily ascertainable time, and absent a rule or statute establishing certain boundaries, we determine as a matter of law that "night" for purposes of section 77–23–5 means that period of time from one half hour after sunset to one half hour before sunrise.[3] Thus, execution of search warrants more than one half hour after sunset will be deemed to have been served "in the night" within the meaning of section 77–23–5(1).

## VIOLATION OF STATUTE

■ Having interpreted the statute to mean that a specialized showing is required when the warrant is to be served from one half hour after sunset to one half hour before

sunrise, we now consider the State's claim that the court clearly erred in finding that the warrant was served during this period. While the definition of "night" is a matter of law, the trier of fact must determine whether a given time falls within this definition. *See State v. Thurman,* 846 P.2d 1256, 1270 n. 11 (Utah 1993).[4] As mentioned, this is a finding of fact, which we do not set aside unless it is clearly erroneous. Utah R.Civ.P. 52(a).

■ Here, the court found that the warrant was served during the night based on the parties' stipulation that the officers executed the warrant at 6:30 p.m. on January 20, 1992, and that the sun set at 5:20 p.m. on that day.

Given this stipulation, the court did not clearly err in taking judicial notice that 6:30 p.m. on a late January day would have taken place at night pursuant to section 77–23–5(1). *See* Utah R.Evid. 201(b) & (c).

## SUPPRESSION AS A REMEDY

The State claims that even if the officers violated section 77–23–5, the court nevertheless erred in suppressing the evidence.

■ *Rowe II* is dispositive. "[S]uppression of evidence is an appropriate remedy for illegal police conduct only when that conduct implicates a fundamental violation of a defendant's rights." *State v. Rowe,* 850 P.2d 427, 429 (Utah 1992) (citations omitted). " 'It is only where the violation also implicates fundamental, constitutional concerns, is conducted in bad-faith or has substantially prejudiced the defendant that exclusion may be an appropriate remedy.' " *State v. Fixel,* 744 P.2d 1366, 1369 (Utah 1987) (quoting *Commonwealth v. Mason,* 507 Pa. 396, 490 A.2d 421, 426 (1985)); *accord Rowe II,* 850 P.2d at 429. "The proponent of a motion to suppress has the burden of establishing that his [or her] own Fourth Amendment rights were violated by the challenged search or seizure."

---

3. This definition not only constitutes a commonly accepted meaning of nighttime, but it is a time period that can readily be ascertained. Moreover, the definition has been recognized in other statutes. *See, e.g.,* Utah Code Ann. § 41–6–118(a) (1993) (drivers must turn on headlights one half hour after sunset to half hour before sunrise).

4. LaFave suggests that the legislature avoid the confusion surrounding the definition of "nighttime" by providing that absent a special showing, a search warrant may be executed only during specified hours. LaFave, § 4.7(b) at 264 n. 22.

*Rakas v. Illinois,* 439 U.S. 128, 130 n. 1, 99 S.Ct. 421, 424 n. 1, 58 L.Ed.2d 387 (1978); *accord State v. Atwood,* 831 P.2d 1056, 1058 n. 1 (Utah App.1992). Whether police action implicates a fundamental violation of a defendant's rights is a question of law, which we independently review for correctness. *State v. Brown,* 853 P.2d 851, 855 (Utah 1992).

The holding in *Rowe II* turned on the fact that the officers possessed a daytime search warrant, and a day or nighttime arrest warrant. In short, the officers essentially were authorized to enter the dwelling at any time to arrest an occupant and to secure the premises. The majority as well as the two justices concurring in the result concluded that the occupants in *Rowe II* were not substantially prejudiced by the nighttime search entry. *Rowe II,* 850 P.2d at 429–30.

 The issue here is whether the court correctly determined that the search "amounted to a fundamental violation" of the Simmonses' constitutional rights and thus required suppression of the evidence seized. Unfortunately, the court had very little evidence before it. The evidence included the parties' stipulation regarding the date and time of the search and the time of sunset, and a valid warrant in effect authorizing the police to search the residence during the day. In short, the Simmonses had not met their evidentiary burden of showing that the search was a fundamental violation of their rights. Thus, the court had no evidence upon which to base its conclusion.

We therefore reverse the court's determination that the search was a fundamental violation of the Simmonses' constitutional rights. We likewise reverse its order suppressing the evidence, and we remand for further proceedings.

## CONCLUSION

We determine as a matter of law that "night" or "nighttime" encompasses a common-sense definition of one half hour after sunset to one half hour before sunrise. We further conclude that the trial court necessarily made a factual finding, based on the parties' stipulation, that the officers served the warrant during the night, and therefore the service of the warrant violated section 77–23–5. Notwithstanding that the search violated this section, we conclude that the trial court had no basis to determine that the search was a fundamental violation of the Simmonses' constitutional rights. We therefore reverse the trial court's order suppressing the evidence and remand the matter to the trial court for further proceedings consistent with this opinion.

BENCH and JACKSON, JJ., concur.