UNITED STATES of America,
Plaintiff-Appellee,

v.

Gilbert MORENO, Defendant-Appellant.

No. 82–1362.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 11, 1983.

Decided March 17, 1983.

**816**

George W. Hunt, San Diego, Cal., for defendant-appellant.

Bruce R. Castetter, Asst. U.S. Atty., argued; Peter K. Nunez, U.S. Atty., Larry Zoglin, Asst. U.S. Atty., on the brief, San Diego, Cal., for plaintiff-appellee.

Before ELY, HUG, and CANBY, Circuit Judges.

HUG, Circuit Judge:

Gilbert Moreno appeals his convictions for possession of cocaine with intent to distribute and conspiracy, 21 U.S.C. §§ 841(a)(1) and 846. Moreno was arrested when officers executing a search warrant at his home discovered cocaine and drug paraphernalia. He sought suppression of the seized materials, contending that the officers who executed the warrant had violated the "knock and notice" requirement of 18 U.S.C. § 3109. We conclude that the district court erred in denying the suppression motion and that Moreno's conviction must therefore be reversed.

### I

Moreno lived in a 76-unit apartment building in San Diego. Each apartment opened onto a common hallway. A wooden door that gave access to the interior of Moreno's apartment was recessed approximately six feet from the common hallway. The recessed area, an alcove of approximately 36 square feet, was for the exclusive use of the occupants of Moreno's apartment. Windows of the apartment's bedrooms opened into the alcove. At the point where the alcove abutted the common hallway, and contiguous to the apartment's exterior walls, was an ornamental iron gate. The gate was kept locked, and only the apartment's residents could open it. It was impossible to enter Moreno's apartment without first gaining access through the gate.

Federal and local officers had conducted surveillance at Moreno's apartment. They observed frequent visitors, all of whom rang the door bell adjacent to the iron gate prior to being admitted to the apartment by Moreno, who would unlock the gate and relock it as soon as the visitor entered. No visitor was observed proceeding directly to the interior door, as the gate was always locked. Because of these observations, the officers who executed the search warrant carried with them a "jimmy." They crawled beneath the window adjacent to the gate, forced open the gate with the crowbar, and entered the alcove. At the solid door that opened onto the apartment's interior, the officers knocked and announced their intent to search the apartment.[1] They were admitted to the apartment by one of Moreno's codefendants. The apartment was searched and its occupants arrested.

In denying Moreno's suppression motion, the district court found that 18 U.S.C. § 3109 did not apply to the gate because Moreno had no reasonable expectation of privacy in the alcove area between the gate and the solid door. This was because the open nature of the gate permitted public view of the alcove from the common hallway. The court also found that "[if] the agents had knocked on the gate, it is doubtful whether or not the occupants of the apartment could have heard [them and if they] had been heard at this point the occupants of the apartment would have had ample time to destroy any contraband." We review the district court's factual findings under the clearly erroneous standard. *United States v. Wysong,* 528 F.2d 345, 348 (9th Cir.1976). The issue whether 18 U.S.C. § 3109 is applicable on these facts is a question of law.

### II

Section 3109 provides that:

The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice

---

1. There is no dispute that the entry at the solid door complied with 18 U.S.C. § 3109.

of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

The enforcement of these requirements serves three interests. First, it provides protection from violence, assuring the safety and security of both the occupants and the entering officers. *United States v. Bustamante-Gamez,* 488 F.2d 4, 9 (9th Cir.1973), *cert. denied,* 416 U.S. 970, 94 S.Ct. 1993, 40 L.Ed.2d 559 (1974); *see United States v. Fluker,* 543 F.2d 709, 716 (9th Cir.1976). Second, it protects "the precious interest of privacy summed up in the ancient adage that a man's house is his castle." *Miller v. United States,* 357 U.S. 301, 307, 78 S.Ct. 1190, 1194, 2 L.Ed.2d 1332 (1958); *see Fluker,* 543 F.2d at 716. Finally, it protects against the needless destruction of private property. *Bustamante-Gamez,* 488 F.2d at 9; *see United States v. Crawford,* 657 F.2d 1041, 1045 (9th Cir.1981).

 The district court based its conclusion that section 3109 did not apply to the gate on the determination that Moreno had no expectation of privacy in the alcove area. After careful review of the transcripts and the photographic evidence, we conclude that finding is clearly erroneous. We do not believe it is decisive that passers-by in the common hallway could see into the alcove. It is clear that an outer door of a home need not be opaque to be entitled to the protection of section 3109. The knock and announce requirement applies if the door is made in whole or in part of glass or screen, so that the interior of the home is visually accessible. *See, e.g., United States v. Whiting,* 311 F.2d 191 (4th Cir.1962), *cert. denied,* 372 U.S. 935, 83 S.Ct. 882, 9 L.Ed.2d 766 (1963). The statute expressly applies to windows, clearly indicating that officers' ability to see into an area does not defeat the occupants' privacy and security interests in it.

The facts do not support the district court's finding that the alcove was not an integral part of Moreno's apartment. The gate was controlled completely by the individual apartment owner. Non-residents gained access to the alcove only by ringing a buzzer at the gate. The alcove was occupied only by the apartment resident, and was not held in common with the occupants of other apartments in the building. It was surrounded on three sides by the walls of the apartment, and windows from the rooms of the apartment opened onto the alcove. These are similar to the factors we applied in *Fluker* to conclude the apartment residents had an expectation of privacy in the space between outer and inner apartment doors. 543 F.2d at 716; *see also United States v. Arboleda,* 633 F.2d 985, 991 (2d Cir.1980), *cert. denied,* 450 U.S. 917, 101 S.Ct. 1362, 67 L.Ed.2d 343 (1981). Based on *Fluker,* we conclude that the alcove was clearly a part of the apartment. The gate protected Moreno's privacy and security interests in the alcove, and the officers were therefore prohibited from forcibly entering the gate without complying with section 3109.[2]

The district court also found that any effort to knock and announce would have been useless because it might not have been heard inside the apartment. No evidence supports this finding.[3] It is clear that other visitors to the apartment were able to notify the occupants of their presence by using the buzzer. The gate was immediately adjacent to one of the bedrooms and approximately six feet from the door, so that it is most likely that an announcement would have been heard. In addition, Moreno testified that he and others in the apartment did hear the gate open as the officers entered.

 The district court further determined that compliance with section 3109

---

2. As in *Fluker,* 543 F.2d at 717, we emphasize that our holding is confined to the unique physical layout of this apartment. We do not suggest that all exterior gates are protected from entry by section 3109.

3. In rejecting this finding, we do not intimate that the occupants' supposed inability to hear the announcement would necessarily excuse compliance with the statute. An attempt to notify by knocking and announcing complies with the statute whether or not it is heard.

was excused because the delay would have permitted destruction of contraband. The existence of exigent circumstances, including the destruction of evidence, does excuse noncompliance with the statute. *Sabbath v. United States,* 391 U.S. 585, 591, 88 S.Ct. 1755, 1759, 20 L.Ed.2d 828 (1968); *United States v. Whitney,* 633 F.2d 902, 908 (9th Cir.1980), *cert. denied,* 450 U.S. 1004, 101 S.Ct. 1717, 68 L.Ed.2d 208 (1981). However, the possibility of destruction of evidence exists in every narcotics investigation. In order to justify forced entry without an announcement of authority and refusal of admittance, there must be some evidence to support the suspicion that contraband will be destroyed. *Id.* at 910; *Bustamante-Gamez,* 488 F.2d at 12; *see generally* 2 La Fave, *Search and Seizure: A Treatise on the Fourth Amendment* § 4.8(d) (1978). In *Fluker* we suggested such evidence might consist of "sounds of running feet or other suspicious activity" or knowledge that the search was expected. 543 F.2d at 717. Our review of the record reveals no such evidence in this case. Moreover, the Government fails to explain why, if exigent circumstances existed at the time of the entry at the gate, they did not also exist when the officers reached the solid door. At that point they did knock and announce their purpose, apparently not suspicious that Moreno was destroying contraband. We therefore conclude that exigent circumstances did not excuse noncompliance with section 3109.[4]

We also believe it is important to consider this entry in relation to the third interest protected by section 3109—the needless destruction of private property. On these facts, we do not view as reasonable, in fourth amendment terms, the decision to pry open the outer enclosure of the apartment with a crowbar without first ringing the buzzer and affording the occupants an opportunity to let the officers in voluntarily. The Government has offered us no justification for the forced entry of Moreno's property.

4. There was some suggestion below that the officers suspected Moreno was armed, so that an unannounced entry was necessary for the officers' protection. *See Whitney,* 633 F.2d at

## III

Where officers executing a search warrant violate section 3109, the fruits of the search must be suppressed. *Miller,* 357 U.S. at 314, 78 S.Ct. at 1198; *Fluker,* 543 F.2d at 717. The Government asks that we apply that rule narrowly in this case, suppressing only the "fruits" of the forced entry through the gate, but admitting the products of the lawful entry through the solid door. It contends that because there is no nexus between the unlawful entry and the evidence seized, the second entry dissipated the taint of the unlawful entry. It also suggests that the "inevitable discovery" doctrine applies in that the seizure would have resulted in any event from the lawful entry through the solid door.

When there has been illegal police conduct prior to the seizure of evidence, the admissibility of that evidence depends upon whether "the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *United States v. Harris,* 501 F.2d 1, 6 (9th Cir.1974), *quoting Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963). We have held that where an unlawful search is followed by a subsequent lawful search, the products of the latter search need not be suppressed because the "mere existence of fruitless unlawful searches does not taint a subsequent lawful one." *United States v. Haddad,* 558 F.2d 968, 975 n. 6 (9th Cir.1977); *see Harris,* 501 F.2d at 6. In those cases, the subsequent search was so independent of the first that it was "sufficiently distinguishable." In this case, however, the Government tries to characterize as two separate searches what was instead one continuous law enforcement activity. The entry at the solid door occurred immediately after the forced entry and was

910; *United States v. McShane,* 462 F.2d 5, 6 (9th Cir.1972). However, the district court apparently did not credit that testimony and the Government has not renewed that claim here.

made possible by that entry. The products of the search were therefore not "so attenuated as to dissipate the taint" of the illegal entry. *United States v. Huberts,* 637 F.2d 630, 638 (9th Cir.1980), *cert. denied,* 451 U.S. 975, 101 S.Ct. 2058, 68 L.Ed.2d 356 (1981).

The "inevitable discovery" doctrine is also inapplicable here. That rule requires that the otherwise inadmissible evidence would have been discovered *independently* by legal means. *Id.* at 638–39; *United States v. Schmidt,* 573 F.2d 1057, 1065–66 n. 9 (9th Cir.), *cert. denied,* 439 U.S. 881, 99 S.Ct. 221, 58 L.Ed.2d 194 (1978). Because we do not view the second entry as independent of the unlawful entry, we do not apply the "inevitable discovery" rule.

The district court erred in refusing to suppress the items seized in Moreno's apartment. In view of this conclusion, we need not address Moreno's remaining contention. The judgment is REVERSED.