**STATE of Utah, Plaintiff and Appellee,**

v.

**Arthur RIBE, Defendant and Appellant.**

No. 920234–CA.

Court of Appeals of Utah.

May 26, 1994.

Robert Breeze (argued), Salt Lake City, for appellant.

Todd A. Utzinger, Asst. Atty. Gen., (argued), Jan Graham, State Atty. Gen., Salt Lake City, for plaintiff.

Before BENCH, BILLINGS and ORME, JJ.

## OPINION

ORME, Associate Presiding Judge:

Defendant entered a conditional guilty plea to possession of a controlled substance with intent to distribute, a third degree felony, in violation of Utah Code Ann. § 58–37–8(1)(a)(iv) (Supp.1992). Defendant now appeals the denial of his motion to suppress evidence that the State concedes was seized in violation of Utah's knock-and-announce statute, Utah Code Ann. § 77–23–10 (1990). We reverse.

## FACTS

■ On March 19, 1991, Detectives Kevin Judd and Craig Watson, along with several other officers from the Salt Lake County Sheriff's Office and the Metro Narcotics Strike Force, proceeded to defendant's residence to execute a knock-and-announce search warrant.[1]

As the police approached defendant's residence on foot, they observed him standing just outside the front door of his home. After seeing the officers, defendant fled. De-

tective Judd observed defendant fleeing, and several officers quickly pursued him. Rather than give chase, Judd followed his assignment and ran immediately to the front door. He found the primary door open, but the storm door closed. This situation enabled him to see directly into the living room. Detective Judd testified that he could see into the living room, not that he saw any individual or any controlled substance inside the home. Without knocking, announcing he had a warrant, or waiting for someone to answer the door, Detective Judd "grabbed the door and called, 'Police,' and ran in."[2] As soon as he stepped through the doorway, he yelled "Police. Don't move." Directly to his left he observed defendant's wife sitting on a couch.

After securing defendant approximately ten feet from his home and entering the house, the officers apparently realized the search warrant had been left at the police station. An officer immediately retrieved the warrant and allowed defendant and his wife to examine it. Marijuana was then seized from inside the home.

Defendant filed a motion to suppress the marijuana on the basis that the seizure violated Utah's knock-and-announce statute. The trial court denied defendant's motion and made the following findings from the bench:

> My finding is that the police did announce their presence. . . .[3]

---

1. Utah Code Ann. § 77–23–10 (1990), known as Utah's knock-and-announce statute, states:

   When a search warrant has been issued authorizing entry into any building, room, conveyance, compartment, or other enclosure, the officer executing the warrant may use such force as is reasonably necessary to enter:
     (1) If, after notice of his authority and purpose, there is no response or he is not admitted with reasonable promptness. . . .

2. The record is silent as to whether the detective's weapon was drawn.

3. Detective Judd testified that he yelled very loudly "police" two times and then yelled "[s]top running. Police." He also testified that he yelled "[s]top, Ringo; police." Detective Watson testified that he heard others shouting something to the effect of "police" and "[s]earch warrant"

when defendant ran. The defendant even admitted hearing the officers shout "[p]olice. Stop."

   The trial court's generalized finding of "announcement" does not specify what words were actually uttered, i.e., whether the officers said only "police" or "search warrant." Thus, it is impossible to tell whether they announced their "authority and purpose" as opposed to merely their presence. *See* Utah Code Ann. § 77–23–10 (1990) (knock-and-announce statute speaks of notice of "authority and purpose"). *Cf., e.g., United States v. Leichtnam*, 948 F.2d 370, 371 (7th Cir.1991) ("[N]o precise form of words is required. . . . It is sufficient that the party hath notice, that the officer cometh not as a mere trespasser, but claiming to act under a proper authority.") (quoting *In re Curtis*, 168 Eng.Rep. 76 (1756)).

   Far more noteworthy is the absence of any finding that the *occupants* of the dwelling were

Further, it's my finding that the circumstances were such that, and all of the witnesses attested to this, the defendant was exiting the home as the police arrived, heard the police identify themselves as police, saw them in uniform, saw them in the vicinity of police vehicles, and that, according to the testimony of at least some of the police officers, he fled from the police.

It's my finding that actual notice is the legal requirement, and that occurred in this instance.

Further, it's my finding that based upon the testimony of Officers Watson and Judd, the door in question was open, not closed, obviating in part the knock requirement, especially in view of the fact that the testimony was clear that the defendant had already seen these individuals as he was exiting, or as he had already exited the [house].

The court's subsequent clarifying order states, in part, as follows:

After having reviewed the transcripts and having heard argument from the parties the Court ruled that the police did in fact announce their presence, that the testimony of the Defendant's wife was lacking in credibility in view of the totality of facts and circumstances and that the police announced their presence and the defendant saw them and that the police had a search warrant, and that [although] the storm door was closed[,] the wooden door was open. Therefore, the Motion to Suppress was denied.

Defendant appeals, claiming the trial court erred in not suppressing the evidence. The State concedes that the officers in this case violated Utah Code Ann. § 77–23–10 (1990)

when they entered defendant's home without first knocking and waiting for a response because the warrant did not authorize a no-knock entry. The State also concedes that there were no exigent circumstances to justify entry on a no-knock basis. The sole issue, therefore, is whether the violation of Utah's knock-and-announce statute, Utah Code Ann. § 77–23–10 (1990), under the circumstances presented in this case, requires suppression of the evidence obtained in the course of the unlawful search.

## STANDARD OF REVIEW

■ We review the trial court's denial of defendant's motion to suppress in a bifurcated manner, reviewing its subsidiary and factual determinations under a clearly erroneous standard and reviewing its legal conclusions for correctness. *See State v. Pena,* 869 P.2d 932, 935–40 (Utah 1994); *State v. Thurman,* 846 P.2d 1256, 1271 (Utah 1993); *State v. Ramirez,* 817 P.2d 774, 781 n. 3 (Utah 1991); *State v. Godina–Luna,* 826 P.2d 652, 654 (Utah App.1992); *State v. Vigil,* 815 P.2d 1296, 1298 (Utah App.1991).

## DEFENDANT'S ARGUMENT

■ Defendant argues that the determinative issue is whether a violation of section 77–23–10 necessarily constitutes a violation of the Fourth Amendment to the United States Constitution.[4] Defendant urges us to adopt "the current status of the law in the 10th Circuit ... [which] is that a violation of the knock and announce statute is a Fourth Amendment violation." *E.g., United States v. Ruminer,* 786 F.2d 381, 383 (10th Cir.1986) (if officers fail to announce authority and purpose before entering dwelling, and no exigent circumstances shown, evidence "must be

given notice and an opportunity to respond—indeed, the facts indicate otherwise. *See, e.g., United States v. Warren,* 730 F.Supp. 451, 454 (D.D.C.1989) (knock-and-announce statute violated where officers "shout[ed]) that they were police and had a warrant," but ran directly into house without giving occupants opportunity to respond). Thus, it cannot be argued that the entry was permissible under the "useless gesture" exception. *See* 2 Wayne R. LaFave, *Search and Seizure* § 4.8(f) (2d ed. 1987) (announcement not necessary where it would be useless gesture

because "authority and purpose of the police is already known to those within the premises").

4. Defendant observes that in *State v. Thurman,* 846 P.2d 1256 (Utah 1993), the Utah Supreme Court refused to answer what he regards as the crucial question involved in this case. In *Thurman,* the Court refrained from "deciding whether a violation of the Utah knock-and-announce statute is also a violation of the Fourth Amendment" because answering that question was unnecessary in resolving the case. *Id.* at 1262.

suppressed"). Since the officer's no-knock entry violated the knock-and-announce rules, the appropriate remedy, defendant urges, is suppression because knock-and-announce rules encompass substantive rights that rise to a constitutional level. *E.g., United States v. Baker*, 638 F.2d 198, 202 (10th Cir.1980) (if "the executing officers failed entirely to announce their authority and purpose before kicking down the door and entering the apartment, and ... no exigent circumstances were shown, the evidence seized must be suppressed").

Defendant's argument also implicates the doctrine discussed in *State v. Rowe*, 850 P.2d 427 (Utah 1992). *Rowe* addressed the question of whether suppression was the appropriate remedy for an acknowledged violation of Utah's nighttime search warrant provision, Utah Code Ann. § 77–23–5 (1990). The Utah Supreme Court stated in *Rowe:*

> We have previously held that suppression of evidence is an appropriate remedy for illegal police conduct only when that conduct implicates a fundamental violation of a defendant's rights:
>
>> Only a 'fundamental' violation of [a rule of criminal procedure] requires automatic suppression, and a violation is 'fundamental' only where it, in effect, renders the search unconstitutional under traditional fourth amendment standards. Where the alleged violation ... is not 'fundamental' suppression is required only where: (1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the [r]ule had been followed,

or (2) there is evidence of intentional and deliberate disregard of a provision of the [r]ule. . . .

>> ... It is only where the violation also implicates fundamental, constitutional concerns, is conducted in bad-faith or has substantially prejudiced the defendant that exclusion *may* be an appropriate remedy.

850 P.2d at 429 (modifications in original; footnotes omitted) (quoting *State v. Fixel*, 744 P.2d 1366, 1369 (Utah 1987)). Defendant reasons that if a violation of section 77–23–10 also constituted a violation of the Fourth Amendment, then suppression would be warranted pursuant to *Rowe* since it would constitute a "fundamental" violation.[5] *See, e.g., United States v. Mueller*, 902 F.2d 336, 343 (5th Cir.1990) (opining that most circuits have followed doctrine that violation of federal knock-and-announce statute should be considered a violation of the Fourth Amendment).

## STATE'S ARGUMENT

The State argues that, despite the violation of section 77–23–10, suppression is not an appropriate remedy because the conduct was not an egregious violation and none of the basic interests that support the knock-and-announce requirement were appreciably compromised.[6]

Specifically, the State asserts that in *State v. Buck*, 756 P.2d 700 (Utah 1988), the seminal case on section 77–23–10, the knock-and-announce requirements were clearly violated.

---

**5.** Defendant raised other issues in his brief. First, he argued that suppression is required under *Rowe* both because, under the prejudice prong, the search was more abrasive than necessary and, under the intentional misconduct prong, no evidence indicated the police thought they had a no-knock warrant. *See Rowe*, 850 P.2d at 429. In light of our holding, we do not reach these issues.

Second, defendant raised issues as to: (1) whether the warrant was executed illegally and (2) whether the State waived its right to raise the issue of exigent circumstances. In light of the State's concessions that the police officers violated section 77–23–10 and that the State did, indeed, waive its right to raise the issue of exigent circumstances, we need not address these issues.

**6.** The State also argues that there is nothing in the record to indicate defendant was substantially prejudiced by the violation or that the police officers executed the search in bad faith. *See Rowe*, 850 P.2d at 429. We need not reach these issues. *See supra* note 5.

In addition, the State acknowledged at oral argument that the issue of defendant's standing had not been addressed because it had not been raised below. *See, e.g., State v. Marshall*, 791 P.2d 880, 887 (Utah App.) (rule that standing cannot be raised for the first time on appeal "was fashioned to protect the defendant from being required to deal with new legal issues on appeal when he had no warning of the necessity to develop the relevant facts below"), *cert. denied*, 800 P.2d 1105 (Utah 1990).

The Supreme Court of Utah, in determining the appropriate remedy, analyzed the violation in terms of how it affected the interests that the statute was intended to protect. The interests [7] supporting the knock-and-announce requirement were stated to be "(1) the protection of an individual's private activities within his home, (2) the prevention of violence and physical injury to both police and occupants which may result from an unannounced police entry, and (3) the prevention of property damage resulting from forced entry." *Buck*, 756 P.2d at 701. With the benefit of hindsight, the State argues that because "none of the interests identified in *Buck* were appreciably compromised by the police conduct in this case," suppression is inappropriate.

## KNOCK-AND-ANNOUNCE STATUTE AND SUPPRESSION: BACKGROUND

"The proposition that police must ordinarily give notice of their authority and purpose prior to making an entry of premises to arrest a person therein, which has common law credentials and is often found expressed by statute, seems to have been viewed by the Supreme Court in *Ker v. California* as a Fourth Amendment requirement." [8] Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 3.6 at 183 (2d ed. 1992). "*Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), is regarded as authority for the proposition that 'the rule of announcement is a constitutional requirement implicit in the fourth amendment proscription against unreasonable searches and seizures.'" *State v. Cleveland*, 118 Wis.2d 615, 348 N.W.2d 512, 517 (1984) (quoting Michael R. Sonnenreich and Stanley Ebner, *No-Knock and*

*Nonsense, An Alleged Constitutional Problem*, 44 St. John's L.Rev. 626, 643 (1970)).

In *Ker*, the police obtained a passkey to petitioner's apartment from the building manager. An "officer unlocked and opened the door, proceeding quietly, ... in order to prevent the destruction of evidence, and found petitioner George Ker sitting in the living room." 374 U.S. at 28, 83 S.Ct. at 1627 (footnote omitted). Ker argued that the lawfulness of the arrest was vitiated by the method of entry.[9] *Id.* at 37, 83 S.Ct. at 1632. However, while

> eight justices apparently agreed that a police officer's manner of entry is subject to the fourth amendment standards of reasonableness; four of these eight justices concluded that the unannounced entry was reasonable in that case, and four concluded it was unreasonable; the ninth justice concluded that searches and seizures by state authorities should be judged by the fundamental fairness criterion of the due process clause of the fourteenth amendment and, applying this test, upheld the entry.

*Cleveland*, 348 N.W.2d at 517 (footnote omitted). The *Cleveland* court further observed that the "United States Supreme Court has thus indicated that there are minimum constitutional requirements for the manner of executing a search warrant but has not yet defined these requirements with precision." [10] *Id.* See also *Commonwealth v. Chambers*, 528 Pa. 403, 598 A.2d 539, 540 (1991) ("Fourth Amendment's prohibition against unreasonable searches and seizures applies to the manner of warrant's execution.").

Writing for the dissenting justices in *Ker*, who, as noted, differed from four of their

---

7. These "interests" have also been described as "traditional purposes," *State v. Farber*, 314 N.W.2d 365, 369 (Iowa 1982), and "policies." *State v. Iverson*, 364 N.W.2d 518, 526 (S.D.1985).

8. While *Ker* involved an arrest, "it has generally been assumed (correctly, it would seem) that *Ker* is also applicable to search warrants." 2 Wayne R. LaFave, *Search and Seizure* § 4.8(a) (2d ed. 1987).

9. The officers admittedly violated California Penal Code § 844, which stated:
    To make an arrest, ... in all cases a peace officer, may break open the door or window of

the house in which the person to be arrested is, or in which ... [he has] reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired.
    *Ker*, 374 U.S. at 37 n. 9, 83 S.Ct. at 1632 n. 9.

10. "[T]he degree that the fourth amendment incorporates a requirement of notice ... has been subject to much confusion." Robert J. Moore et al., Project, *Recent Developments in Utah Law*, 1989 Utah L.Rev. 143, 234.

colleagues more on result than applicable doctrine, Justice Brennan stated that

> the Fourth Amendment is violated by an unannounced police intrusion into a private home, with or without an arrest warrant, except (1) where the persons within already know of the officers' authority and purpose, or (2) where the officers are justified in the belief that persons within are in imminent peril of bodily harm, or (3) where those within, made aware of the presence of someone outside (because, for example, there has been a knock at the door), are then engaged in activity which justifies the officers in the belief that an escape or the destruction of evidence is being attempted.

*Ker,* 374 U.S. at 47, 83 S.Ct. at 1636 (Brennan, J., dissenting).

Justice Clark, writing for the four justices who applied the Fourth Amendment but declined suppression, based his conclusion on the presence of exigent circumstances. "Here," he stated,

> justification for the officers' failure to give notice is uniquely present. In addition to the officers' belief that Ker was in possession of narcotics, which could be quickly and easily destroyed, Ker's furtive conduct in eluding them shortly before the arrest was ground for the belief that he might well have been expecting the police.

*Id.* at 40, 83 S.Ct. at 1633. It would seem, therefore, that prior notice or announcement to the occupants before entering a dwelling to execute a search warrant is constitutionally mandated unless certain exigent circumstances, such as those discussed by Justices Brennan and Clark, are present in a particular case. In the instant case, it is undisput-ed, based upon the State's concession, that no such exigent circumstances existed.

The Fifth Circuit Court of Appeals recently summarized the current state of federal judicial perceptions regarding the constitutional dimensions of knock-and-announce requirements. In *United States v. Mueller,* 902 F.2d 336 (5th Cir.1990), the court observed that in *Ker*

> the Court considered a case implicating the relationship between the fourth amendment and section 3109,[11] but no majority of the Court reached a definitive conclusion as to whether a violation of section 3109 generally encompasses a fourth amendment violation. Since *Ker,* most of the circuits have followed, although often with certain embellishments, the four-Justice dissent in *Ker,* which contended that a violation of the "knock-and-announce" rule of section 3109 should also be a violation of the fourth amendment.

902 F.2d at 343 (footnote omitted).[12] This view has not gone uncriticized:

> Although the plurality opinion in *Ker* plainly requires that an unannounced forcible entry be reasonable within the meaning of the fourth amendment, *Ker* refrained from imposing an inflexible fourth amendment "knock and announce" rule incorporating in all circumstances the particular procedures delineated in section 3109.[13] Several courts of appeals since *Ker* have discerned a "knock and announce" requirement in the Constitution, though often in *obiter dicta* and sometimes without close analysis of the plurality opin-

---

**11.** The federal knock-and-announce statute states:

> The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

18 U.S.C. § 3109 (1988).

**12.** *Cf. Commonwealth v. Goggin,* 412 Mass. 200, 587 N.E.2d 785, 787 (1992) ("Our knock and announce rule is one of common law which is not constitutionally compelled.").

**13.** Footnote 6 appears at this point in the opinion quoted. The footnote is integral to understanding the court's opinion and states, in relevant part, as follows:

> In *Sabbath v. United States,* 391 U.S. 585, 591 n. 8, 88 S.Ct. 1755, 1759 n. 8, 20 L.Ed.2d 828 (1968), the Court indicated that *Ker* indeed had not settled the constitutional question. "Exceptions to any *possible* constitutional rule relating to announcement and entry have been recognized [by the dissent in *Ker*]" (emphasis added).

*United States v. Daoust,* 728 F.Supp. 41, 48 n. 6 (D.Me.1989) (modifications in original), *aff'd,* 916 F.2d 757 (1st Cir.1990).

ion in *Ker*.[14] *Cf. United States v. Francis*, 646 F.2d 251, 258 (6th Cir.) ("Though each case by itself is less than compelling, their conclusion has been unanimous: the fourth amendment forbids the unannounced, forcible entry of a dwelling in the absence of exigent circumstances.") (unannounced entry of *business* premises) (dictum), *cert. denied*, 454 U.S. 1082, 102 S.Ct. 637, 70 L.Ed.2d 616 (1981).

*United States v. Daoust*, 728 F.Supp. 41, 48–49 (D.Me.1989) (emphasis in original), *aff'd*, 916 F.2d 757 (1st Cir.1990).

Such skepticism about whether the requirements of section 3109 exactly mirror the requirements of the Fourth Amendment is shared by the Third Circuit Court of Appeals. The Third Circuit noted that "the Supreme Court has never definitively determined the relationship between section 3109 and the Constitution" [15] and opined that

while the prohibitions of the Fourth Amendment and § 3109 overlap, they do not perfectly coincide. *United States v. Nolan*, 718 F.2d 589, 600 (3d Cir.1983). The court noted that

> the *Ker* plurality would appear to reject the proposition that the fourth amendment mandates a knock and announce requirement with precise and narrowly defined exceptions, although a failure by police to knock and announce could, depending on the circumstances, violate the more general fourth amendment reasonableness requirement for any arrest.

Although we are not bound by the *Ker* plurality opinion,[16] we are influenced by it and are persuaded, when we consider the divergent purposes of the fourth amendment and section 3109, that the latter does not embody a constitutional requirement.... [However, an invasion may be]

---

14. Footnote 7 appears at this point in the *Daoust* opinion. Because of its importance in identifying courts which have discerned a knock-and-announce requirement, especially the Tenth Circuit, we quote it verbatim:

> See, e.g., *United States v. Baker*, 638 F.2d 198, 202 n. 7 (10th Cir.1980) ("knock-and-announce" rule incorporated "to some extent" in fourth amendment) (dictum); *United States v. Valenzuela*, 596 F.2d 824, 830 (9th Cir.) (same) (dictum), *cert. denied*, 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071 (1979); *United States v. Murrie*, 534 F.2d 695, 698 (6th Cir.1976) (fourth amendment incorporates all elements of § 3109) (dictum); *United States v. Bustamante–Gamez*, 488 F.2d 4, 9 (9th Cir.1973) (requirements of § 3109 incorporated, "to some extent," in fourth amendment), *cert. denied*, 416 U.S. 970, 94 S.Ct. 1993, 40 L.Ed.2d 559 (1974); *United States v. Mapp*, 476 F.2d 67, 75 (2d Cir.1973) (merger of § 3109 and fourth amendment) (citing *United States v. Manning*, 448 F.2d 992, 1002 (2d Cir.) (en banc rehearing), *cert. denied*, 404 U.S. 995, 92 S.Ct. 541, 30 L.Ed.2d 548 (1971)); *United States ex rel. Manduchi v. Tracy*, 350 F.2d 658, 660–61 (3d Cir.) (forcible entry incident to execution of search warrant, after knocking and waiting "a few seconds," not unreasonable in circumstances; § 3109 held inapplicable), *cert. denied*, 382 U.S. 943, 86 S.Ct. 390, 15 L.Ed.2d 353 (1965).

*United States v. Daoust*, 728 F.Supp. 41, 48 n. 7 (D.Me.1989), *aff'd*, 916 F.2d 757 (1st Cir.1990).

15. Commenting on the view taken by the circuit courts of appeal, the Third Circuit observed:

> Although the courts of appeals seem to be in general agreement that there is some constitu-

tional dimension to the knock and announce requirement, none has had occasion to address the question whether § 3109 is, in terms, a constitutional requirement.

*United States v. Nolan*, 718 F.2d 589, 600 n. 21 (3d Cir.1983) (citations omitted).

16. Footnote 28 appears at this point in the quotation taken from *Nolan*. Because of its importance in explaining why a violation of the federal knock-and-announce rule is not a per se violation of the Constitution, we quote it verbatim:

> As we noted above, the Supreme Court in *Sabbath v. United States*, *supra*, apparently approved of the exceptions to the knock and announce requirement listed by the dissenters in *Ker*. We do not, however, read *Sabbath* as approving the *Ker* dissenters' position on the constitutionality of § 3109. The Court in *Sabbath* held, purely as a matter of statutory interpretation of § 3109, that none of the exigent circumstances recognized by the *Ker* dissenters were met in the case under review:
>
> Exceptions to *any possible* constitutional rule relating to announcement and entry have been recognized, *see Ker v. California*, *supra*, [374 U.S.] at 47, 83 S.Ct. at 1636 (opinion of Brennan, J.), and there is little reason why those limited exceptions might not also apply to § 3109, since they existed at common law, of which the statute is a codification.
>
> [*Sabbath*,] 391 U.S. at 591 n. 8, 88 S.Ct. at 1759 n. 8 (emphasis added). The Court had no occasion in *Sabbath* to explore the contours of a constitutional rule; it merely approved the exceptions as a matter of statutory construction.

*Nolan*, 718 F.2d at 601 n. 28.

so violative of the privacy and property rights of the occupants of the dwelling as to be unreasonable within the meaning of the fourth amendment, *see Ker, supra,* but not every violation of the statute will present such an unreasonable intrusion.

*Id.* at 601–02.

## KNOCK–AND–ANNOUNCE STATUTE AND SUPPRESSION: UTAH VIEW

Applying the rigid dictates of cases like the Fifth Circuit's *Mueller* decision [17] to Utah's knock-and-announce statute would necessarily result in suppression. However, in light of the Utah Supreme Court's dictates on the subject of suppression in the context of police violations of "rule[s] of criminal procedure," [18] we decline to adopt a per se rule. While it is clear that the Fourth Amendment's prohibition against unreasonable searches and seizures applies to the manner of a warrant's execution,[19] the line of Utah cases consisting of *State v. Fixel,* 744 P.2d 1366 (Utah 1987), *State v. Buck,* 756 P.2d 700 (Utah 1988), and *State v. Rowe,* 850 P.2d 427 (Utah 1992), reveals a clear disinclination to adopt a per se rule.

In *Fixel,* the State conceded that a Provo City police officer, by purchasing marijuana outside Provo City, had violated Utah's peace officer jurisdiction statute. 744 P.2d at 1368. *See* Utah Code Ann. § 77–9–3 (1982). Defendant sought to suppress the controlled substance on the ground the officer failed to comply with the statutory requirements, but he did not claim his constitutional rights had been violated. In order to determine whether suppression was appropriate, the Court adopted Pennsylvania's "persuasive" standard that

> [o]nly a "fundamental" violation of [a rule of criminal procedure] requires automatic suppression, and a violation is "fundamental" only where it, in effect, renders the search unconstitutional under traditional fourth amendment standards. Where the alleged violation ... is not "fundamental" suppression is required only where:
>
> (1) there was "prejudice" in the sense that the search might not have occurred or would not have been so abrasive if the [r]ule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision of the [r]ule....
>
> ... It is only where the violation also implicates fundamental, constitutional concerns, is conducted in bad-faith or has substantially prejudiced the defendant that exclusion *may* be an appropriate remedy.

*Fixel,* 744 P.2d at 1368–69 (modifications in original; footnotes omitted) (quoting *Commonwealth v. Mason,* 507 Pa. 396, 490 A.2d 421, 426 (1985)). Thus, instead of concluding that a violation of the statute automatically required suppression, the Court reasoned that the police misconduct in that case did not meet the above criteria—it was not "constitutionally or otherwise offensive" [20]—and the evidence should not have been suppressed. *Id.* at 1369.

In *Rowe,* our Supreme Court faced the issue of whether "the exclusionary rule is the appropriate remedy for violation of the nighttime search warrant provisions of section 77–23–5." [21] *Rowe,* 850 P.2d at 428. The court of appeals had determined that the affidavit supporting the warrant presented insufficient

---

17. *See also United States v. Nabors,* 901 F.2d 1351, 1354 (6th Cir.) (evidence procured in violation of § 3109 "must be suppressed"), *cert. denied,* 498 U.S. 871, 111 S.Ct. 192, 112 L.Ed.2d 154 (1990); *United States v. Singer,* 943 F.2d 758, 762 (7th Cir.1991) (violation of § 3109 excused only if exigent circumstances exist which justify failure to comply).

18. "[R]ule[s] of criminal procedure" is the term used in *State v. Rowe,* 850 P.2d 427, 429 (Utah 1992), and *State v. Fixel,* 744 P.2d 1366, 1368 (Utah 1987), to refer to the "procedural" statutes violated by the police in those two cases.

19. *See, e.g., Commonwealth v. Chambers,* 528 Pa. 403, 598 A.2d 539, 540 (1991) ("Fourth Amendment's prohibition against unreasonable searches and seizures applies to the manner of warrant's execution.").

20. *Fixel,* 744 P.2d at 1369.

21. The defendant in *Rowe* also claimed the search violated the no-knock search provision of Utah Code Ann. § 77–23–10, but that alleged breach was not discussed at any length in the Supreme Court's decision.

evidence to justify inclusion of the nighttime search provision and ordered suppression. *See State v. Rowe,* 806 P.2d 730, 733–35 (Utah App.1991). Indeed, the court of appeals adopted the principle that violation of the statute necessitated suppression regardless of whether the Constitution was also violated. *Id.* at 739. The Supreme Court, eschewing this court's approach, employed the *Mason* standard embraced in *Fixel* and concluded "the violation of section 77–23–5 did not implicate defendant's fundamental rights." *Rowe,* 850 P.2d at 429. Accordingly, the Utah Supreme Court reversed this court's decision that suppression was required.[22] *Id.* at 430.

In support of its position that suppression is only appropriate when conduct implicates a fundamental violation of rights, the Supreme Court in *Rowe* cited *State v. Buck,* 756 P.2d 700 (Utah 1988). *Rowe,* 850 P.2d at 429 n. 9. In *Buck,* police officers executed a search warrant, which did not authorize a no-knock entry, by forcibly breaking into the unoccupied home without knocking or announcing their authority. *Buck,* 756 P.2d at 701. The Court held that section "77–23–10 contemplated that, absent no-knock authority or exigent circumstances, an officer should knock and announce his authority[23] even if no one is on the premises." *Id.* at 702. However, the Court held that the sanction for violating the statute in that case would not be suppression. *Id.* at 702–03. This decision further demonstrates the disfavored view of per se rules in this context and "signals that the Utah Supreme Court will not be overly formalistic in dealing with fourth amendment issues,"[24] an assessment which is especially apropos in light of its decision in *Rowe.*

*Buck,* however, must be analyzed within the context of its rather narrow holding. The case dealt only with *unoccupied* dwellings. *Id.* *See* Robert J. Moore et al., Project, *Recent Developments in Utah Law,* 1989 Utah L.Rev. 143, 234. In fact, the State concedes *Buck* is not necessarily dispositive since the premises in the present case were occupied, albeit not by defendant. In *Buck* the Court examined the propriety of suppression under three separate microscopes: (1) the interests supporting the statute, (2) case law, and (3) the Fourth Amendment. *Buck,* 756 P.2d at 701–03. As to the statutory interests, the Court was of the view that "the interests protected by the knock-and-announce requirement do not preclude the unannounced entry into an *unoccupied residence* by officers armed with a warrant." *Id.* at 701–02 (emphasis added). Similarly, the Court observed that the case law has "uniformly held that evidence is not suppressible when an officer executes a search without knocking and announcing his authority when *no one* is present." *Id.* at 702–03 (emphasis added). Finally, the Court would not view unlawful "entry of *unoccupied premises* " as a per se violation of the Fourth Amendment. *Id.* at 703 (emphasis added). The clear emphasis of *Buck,* that if a dwelling is unoccupied at the time of an unlawful search suppression is not required, strongly suggests the opposite outcome if a dwelling *is* occupied at the time of an illegal search.

## INTERESTS ANALYSIS

*Buck* laid out the three basic interests that support the knock-and-announce rule,[25] and the State proposes we examine the propriety of suppression for violations of the knock-and-announce statute in light of those interests. We agree, as a general proposition, that this can be a useful analytic framework in the absence of a per se rule. Indeed, LaFave states that "[a]ssessment of these

---

**22.** Justice Durham, writing separately, concurred in the result of the majority solely on the ground that the valid arrest warrant, which permitted nighttime entry, eliminated any prejudice suffered from defects in the search warrant. *Rowe,* 850 P.2d at 430. Justice Zimmerman concurred in the opinion of Justice Durham. *Id.*

**23.** *Compare State v. Thurman,* 846 P.2d 1256, 1261 (Utah 1993) ("knock-and-announce statute allows an officer to enter a residence only if, after giving notice of his or her authority *or*

purpose, the officer is 'not admitted with reasonable promptness' ") (emphasis added) *with* Utah Code Ann. § 77–23–10(1) (1990) ("after notice of his authority *and* purpose") (emphasis added).

**24.** Robert J. Moore et al., Project, *Recent Developments in Utah Law,* 1989 Utah L.Rev. at 143, 234.

**25.** *See supra* note 7 and accompanying text.

purposes in the context of a particular case is a useful way to determine whether the entry in that case violated the Fourth Amendment." 2 Wayne R. LaFave, *Search and Seizure* § 4.8(a) at 273 (2d ed. 1987).

■ While "interests analysis" is one useful method for assessing Fourth Amendment violations, a clear violation of a knock-and-announce statute may still violate constitutional rights even if a defendant is unable to show the violation brought about any of the harms the three interests seek to avoid. 2 Wayne R. LaFave, *Search and Seizure* § 4.8(a) n. 18 (Supp.1993) (citing *Commonwealth v. Chambers*, 528 Pa. 403, 598 A.2d 539 (1991)). A clear violation occurs when the police violate the statute without justification. *See Chambers*, 598 A.2d at 541–42. Thus, notwithstanding the outcome of interests analysis, we believe suppression of the evidence in the instant case is warranted.

In *Chambers*, detectives knocked at the front door of Chambers's home. *Id.* at 540.

> Chambers began to open the door. Simultaneously, the police officer pushed the door open, pushing Mr. Chambers backwards. Having drawn his weapon before the door was opened, the police officer pointed the weapon at Mr. Chambers. He identified himself as an officer and stated that he had a search warrant for the premises.

*Id.* Pretrial motions seeking to suppress the evidence were granted on the ground that Rule 2007 [26] of the Pennsylvania Rules of Criminal Procedure had been violated. The Superior Court affirmed, stating that a "federal constitutional violation [in] the execution of the search warrant" had occurred. *Commonwealth v. Chambers*, 385 Pa.Super. 605,

561 A.2d 1257, 1260 (1989) *aff'd*, 528 Pa. 403, 598 A.2d 539 (1991). The Supreme Court of Pennsylvania granted the Commonwealth's petition for appeal. *Chambers*, 598 A.2d at 540.

The Commonwealth, as the State did in the instant case, conceded that the police action violated the knock-and-announce rule. *Id.* However, despite the violation, the Commonwealth argued that the misconduct should not result in suppression because the issue was whether the police conduct reasonably worked to prevent mistaken resistance by Mr. Chambers, i.e., whether it worked to prevent the breach of one of the statute's three purposes, namely the prevention of violence. *Id.* at 541. The court rejected this argument, stating that "[s]uppression of evidence is not limited ... only to instances in which violence, physical injury, and property damage have actually resulted from the violation of the 'knock and announce' rule" but, instead, determined the fundamental issue to be whether the manner of execution was reasonable because the rule was intended to protect individuals from unreasonable searches and seizures. *Id.* No justification for the police conduct existed: the defendants did not withhold response after the police knocked, the defendants did not know of the officers' purpose, and the officers were not concerned for their safety or that the evidence was about to be destroyed. Consequently, the entry was deemed unreasonable and the evidence suppressed. *Id.* at 542.

In the instant case, the State has directed us to nothing in the record which would indicate the police had become concerned for their safety, especially given that defendant was secured outside the home,[27] or that the

---

26. Rule 2007, Pennsylvania's knock-and-announce rule, states:

> (a) A law enforcement officer executing a search warrant shall, before entry, give, or make reasonable effort to give, notice of his identity, authority and purpose to any occupant of the premises specified in the warrant, unless exigent circumstances require his immediate forcible entry.
> (b) Such officer shall await a response for a reasonable period of time after his announcement of identity, authority and purpose, unless exigent circumstances require his immediate forcible entry.

> (c) If the officer is not admitted after such reasonable period, he may forcibly enter the premises and may use as much physical force to effect entry therein as is necessary to execute the search.

*Chambers*, 598 A.2d at 541.

27. The parties have brought nothing to our attention suggesting the police, immediately preceding the unlawful entry, had formed fears about the possible presence of co-perpetrators or feared any criminal involvement by defendant's wife or daughter. If the police had fears concerning safety or the destruction of evidence be-

evidence was about to be destroyed. *Cf. United States v. Pearson,* 746 F.2d 787, 792 (11th Cir.1984) (although one defendant was encountered on front lawn, exigent circumstances justified alleged violation of announcement statute because officers had reason to believe second defendant, a convicted felon, was armed and inside the house with enormous cache of firearms). To the contrary, the State concedes that no exigent circumstances justified ignoring the knock-and-announce statute and forcefully entering the home. The police simply failed to knock and wait for any period of time, much less a reasonable period of time. *Cf. State v. Thurman,* 846 P.2d 1256, 1261–62 (Utah 1993) (clear-cut minimum waiting period rejected). *Chambers* found the unjustified manner of entry unreasonable, requiring suppression, and we follow suit. *See also State v. Coyle,* 95 Wash.2d 1, 621 P.2d 1256, 1262 (1980) (en banc) (where there was simply no need, i.e., justification, for entry without announcement, suppression was appropriate).

Much like the State here, the Commonwealth also argued that a violation of Rule 2007 should not result in automatic exclusion. *Chambers,* 598 A.2d at 542. The court acknowledged its reluctance to fashion a per se exclusionary rule for every violation of Pennsylvania rules concerning searches and seizures, but reasoned that "exclusion of evidence may be appropriate where the violation 'implicates fundamental, constitutional concerns, is conducted in bad faith or has substantially prejudiced the defendant.'" *Id.* (quoting *Commonwealth v. Mason,* 507 Pa. 396, 490 A.2d 421, 426 (1985)). *See Fixel,* 744 P.2d at 1368–69, *Rowe,* 850 P.2d at 429. The *Chambers* court concluded that the violation there implicated a fundamental, constitutional concern under the Pennsylvania Constitution because the search was executed in an unreasonable manner.[28] We agree with the Pennsylvania court's reasoning, which

turned on the same standard adopted in *Fixel* and reaffirmed in *Rowe.* Accordingly, because the violation of the Utah statute produced an unreasonable search, we hold that the unlawful execution of the warrant in this case implicated a fundamental, constitutional concern and suppression is therefore appropriate.

But even if we were to ignore the LaFave–*Chambers* fundamental violation analysis and proceed directly to the interests analysis urged by the State, we would still require suppression. The premise of the State's argument is that because, in hindsight, none of the three interests were actually compromised, suppression should not occur. We find particularly troublesome the State's contention that the first interest of the knock-and-announce statute—protection of an individual's private activities within the home—was not appreciably compromised because the officer could see into the home through the closed storm door before he entered.[29] The State's assertion is untenable and has been rejected by the Ninth Circuit Court of Appeals. *United States v. Moreno,* 701 F.2d 815 (9th Cir.1983), *rev'd on other grounds after remand,* 758 F.2d 425 (9th Cir.1985).

■ The defendant in *Moreno* lived in a 76–unit apartment. 701 F.2d at 816. Every apartment opened onto a common hallway. Moreno's wooden door that gave access to the interior of his apartment was recessed approximately six feet from the common hallway. The recessed alcove area, consisting of approximately 36 square feet, was for the exclusive use of the occupants of Moreno's apartment. The apartment's bedroom windows opened into the alcove. An ornamental gate separated the alcove from the common hallway. *Id.* "The gate was kept locked, and only the apartment's residents could open it. It was impossible to enter Moreno's apartment without first gaining access

---

fore undertaking the search, they would presumably have sought a no-knock warrant.

28. Nothing in the court's decision indicated that the result would be any different under the federal constitution and, in fact, the lower appellate court, which held that the police conduct violated the federal constitution, was affirmed. *Chambers,* 598 A.2d at 542.

29. We reiterate that Detective Judd testified he could see into the home, but not that he saw anything which would constitute exigent circumstances. The record is silent as to whether he could see defendant's wife or daughter, and there is no indication he saw the controlled substance upon peering into the home.

through the gate." *Id.* When executing the search warrant, the officers "crawled beneath the window adjacent to the gate, forced open the gate with the crowbar, and entered the alcove. At the solid door that opened onto the apartment's interior, the officers knocked and announced their intent to search the apartment." *Id.* Defendant Moreno moved to suppress the evidence on the ground that the officers did not comply with section 3109, the federal no-knock statute, at the gate. The district court concluded section 3109 did not apply on the ground that "Moreno had no expectation of privacy in the alcove area." *Id.* at 817. The Court of Appeals reversed, stating:

> It is clear that an outer door of a home need not be opaque to be entitled to the protection of section 3109. The knock and announce requirement applies if the door is made in whole or in part of glass or screen, so that the interior of the home is visually accessible.

*Id.* We are in accord with this view.

Similarly, in the case of *Commonwealth v. Manni*, 398 Mass. 741, 500 N.E.2d 807 (1986), the officer

> went to the side door of the premises, tried the doorknob, and found the door to be unlocked. Through glass panes in the door, he could see the defendant seated at a desk. He rapped on the door with his right hand and simultaneously opened it with his left hand. He announced that he was a police officer "as soon as [he] got into the room."

*Id.* 500 N.E.2d at 808. On these facts, the court stated "[t]he discovery of panes of glass in the door, through which the police officer could see the defendant seated at a desk, tended to mitigate, rather than in-

crease, any need for the police to enter without announcing themselves." *Id.* 500 N.E.2d at 809. *See also State v. LaPonsie*, 136 Ariz. 73, 664 P.2d 223, 224 (App.1982) ("essence of the knock and announce statute is the proscription against unannounced intrusions whether they occur through locked doors, partially open doors or wide open doors"); *State v. Coyle*, 95 Wash.2d 1, 621 P.2d 1256, 1262 (1980) (en banc) (where no need for unannounced entry, right to privacy impermissibly infringed).[30]

We also disagree with the State's contention that the statute's second purpose—"prevention of violence and physical injury to both police and occupants which may result from an unannounced police entry," *Buck*, 756 P.2d at 701—was satisfied because the police at least announced their presence and their conduct did not increase the likelihood of violence or injury to the parties. Like the *Chambers* court, we reject the idea that suppression should be limited only to instances where personal injury or property damage "actually" occurred. *Chambers*, 598 A.2d at 541.

In *State v. Coyle*, 95 Wash.2d 1, 621 P.2d 1256 (1980) (en banc), the court, in the context of discussing the usual three factors, observed that "[t]he nonoccurrence of either violence or property damage is a felicitous fortuity, and cannot constitute an after-the-fact justification which excuses the unannounced entry."[31] *Id.* 621 P.2d at 1262. *See also Sabbath v. United States*, 391 U.S. 585, 591, 88 S.Ct. 1755, 1759, 20 L.Ed.2d 828 (1968) (since police had no reason to believe informant was in danger, court rejected government's argument that announcement "might" have endangered informant).

---

**30.** The State cites *State v. Suits*, 73 Wis.2d 352, 243 N.W.2d 206, 209 (1976), for the proposition that where the front door is open "[i]t is difficult to maintain that the privacy of the living room occupants was any more violated by the officers' presence inside of the threshold rather than a few feet back". *Id.* 243 N.W.2d at 209. That case is distinguishable because "the approach of the officers was observed, and the party noises were high, [and] the indications ... were that [the officer's] knock would not have been heard and would have amounted to a useless gesture." *Id.* No such exigent circumstances are asserted

in the instant case. Furthermore, even if *Suits* is not distinguishable, we cannot agree that the difference of a few feet is inconsequential where the threshold of a private residence intervenes.

**31.** While *Buck* examined the three interests underlying knock-and-announce rules in hindsight, the propositions asserted, namely minimal privacy invasion and lack of physical injury, consistently ring true in the context of entry of an unoccupied dwelling, while they ring hollow when a home is occupied, as in this case.

Not only are the State's justifications in this case offered with the benefit of hindsight, as near as we can tell from the record any suggestion that defendant's wife might have fled was not a justification the police or the prosecutor articulated at the suppression hearing, but was formulated in the office of the State's appellate counsel. Picking possible justifications after the fact is an entirely unsatisfactory manner by which to decide whether evidence should be suppressed. *Cf. Chambers*, 598 A.2d at 542 ("A search is not to be made legal by what it turns up. In law it is good or bad when it starts and does not change character from what is dug up subsequently.") (quoting *Commonwealth v. Newman*, 429 Pa. 441, 240 A.2d 795, 799 (1968)).

The officers' conduct on the evening in question, in failing to knock and identify their authority and purpose, and give the occupant an opportunity to respond, increased the *risk* of violence at the time of the illegal entry even though the risk did not materialize. *See, e.g., Miller v. United States*, 357 U.S. 301, 313 n. 12, 78 S.Ct. 1190, 1198 n. 12, 2 L.Ed.2d 1332 (1958) (compliance with notice statute "is also a safeguard for the police themselves who might be mistaken for prowlers and be shot down by a·fearful householder").

With respect to the police announcement, the trial court did not find those inside the home were aware of the police presence or purpose and, consequently, whether those inside the home were given any opportunity to admit the police with reasonable promptness. In fact, the police ran in without knocking and allowing the occupants any opportunity to answer. The evidence admittedly supports a finding that the defendant, while outside, heard the police announce their presence, but there is no finding that those in the residence had notice of any sort, much less notice of authority and purpose and an opportunity to surrender their home. The fact the police simply announced their presence to a fleeing defendant, without more, and in the face of concessions by the State that the police violated the statute in the

absence of exigent circumstances, cannot justify the illegal entry.[32]

## CONCLUSION

For the reasons stated, we reverse the trial court's denial of defendant's motion to suppress and remand for such proceedings as may now be appropriate.

BILLINGS, J., concurs.

BENCH, Judge (dissenting):

I believe the main opinion ignores the clear holdings of the Utah Supreme Court in *State v. Rowe*, 850 P.2d 427 (Utah 1992), *State v. Buck*, 756 P.2d 700 (Utah 1988), and *State v. Fixel*, 744 P.2d 1366 (Utah 1987), and this court's holding in *State v. Simmons*, 866 P.2d 614 (Utah App.1993). These cases require that evidence seized pursuant to an allegedly illegal search be suppressed only where there has been a fundamental violation of defendant's rights. *Rowe*, 850 P.2d at 429. Because the police misconduct in this case did not "implicate[ ] a fundamental violation of a defendant's rights," I would affirm the trial court's denial of defendant's motion to suppress. *Id.*

---

**32.** We reiterate that there has been no suggestion by the State that such announcement as there was put those inside the house on sufficient no-

tice so that knocking and announcing would have amounted to a "useless gesture." *See supra* note 3.